95 N.J. Super. 54 (1967)
229 A.2d 820
THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JOHN HARBATUK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1967.
Decided May 11, 1967.
*55 Before Judges LEWIS, LABRECQUE and LEONARD.
*56 Mr. William H. von Oehsen, Jr. argued the cause for appellant (Mr. Gordon D. Griffin and Mr. von Oehsen, attorneys for the Township of Princeton; Mr. Henry A. Hill, Jr., of counsel and on the brief).
Mr. Joseph A. Hoffman, Assistant Attorney General, argued the cause for Mr. Arthur J. Sills, Attorney General of New Jersey, amicus curiae (Mr. Thomas J. Savage on the brief).
No brief and no appearance on behalf of respondent.
The opinion of the court was delivered by LABRECQUE, J.A.D.
Pursuant to leave granted plaintiff appeals from an order of the municipal magistrate of Princeton Township suppressing certain evidence in connection with the charge against defendant John Harbatuk of violation of N.J.S.A. 39: 4-50 (driving while under the influence of intoxicating liquor).
On September 28, 1965 at about 10 P.M. the local police were alerted to be on the lookout for the allegedly intoxicated driver of an automobile which had been involved in an accident on Humbert Street in the Borough of Princeton (borough). The call was relayed to Sergeant Carnevale of the borough police who, with another officer, proceeded to the scene of the accident. By the time they arrived the driver had left the scene but they were given a description of the vehicle and its registration number.
While searching for the offending vehicle Carnevale observed a station wagon pass on U.S. Highway Route 206 which bore the registration number he had received, and began to follow it. As he did so he found himself in the adjacent Township of Princeton (township), so he radioed the township police giving his location and direction. As he proceeded on Route 206 the car ahead of him was weaving from side to side and he finally ordered the driver (defendant) *57 to pull over, using his police car lights and siren for this purpose.
Carnevale's radio message to the township police was heard by Sergeant Petrone of that department. As he came out of police headquarters and was about to enter his car, defendant's station wagon went by, followed by Carnevale in the patrol car. Petrone followed them and arrived just as Carnevale was asking defendant for his license and registration.
On the basis of his observation of defendant, Petrone determined to test him for sobriety and directed him to get into the borough patrol car. Defendant did so and was thereafter driven by Carnevale to the borough police headquarters. In the meantime, Petrone drove defendant's car to the township parking lot and secured it. At borough police headquarters Petrone administered the test, using a Breatholizer which was kept there and shared by the police departments of both the borough and township. He concluded from the test that defendant was under the influence of intoxicating liquor, and a summons and complaint in the form of a uniform traffic ticket was issued by Carnevale calling for defendant's appearance in the municipal court of the township on October 6, 1965. Petrone had suggested that Carnevale sign the complaint because he had witnessed defendant's operation of the car.
On November 11, 1965, when the matter came on to be heard in the township municipal court, defendant moved for dismissal of the complaint on the ground that his arrest had been unlawful and the evidence obtained as a result thereof was inadmissible against him. The magistrate held a hearing on the motion and thereafter entered an order denying the motion to dismiss but granting "the motion to suppress the evidence obtained after the unlawful arrest * * *." In his written opinion the magistrate concluded that the arrest had occurred "when the [borough] officers stopped the defendant," and that the proceedings were not vitiated because a summons, rather than a warrant, had been utilized to bring *58 the defendant before the court. There is no appeal by defendant from the latter ruling.
The magistrate concluded that the arrest was unlawful because the jurisdiction of Carnevale as a police officer of the borough did not extend beyond the borough limits; hence he was without power to make an arrest in the township. Appellant urges, inter alia, that (1) the magistrate lacked jurisdiction to suppress the cited evidence; (2) the initial stopping of the vehicle by Carnevale did not constitute an arrest, and (3) if it did, Carnevale was authorized to make the arrest because (a) as a police officer he had state-wide authority, or (b) the "fresh pursuit" statute, N.J.S. 2A:156-1 et seq., authorized him to do so. The Attorney General argues that although Carnevale's jurisdiction as a police officer did not extend beyond the borders of the borough, he was vested with the authority as a private citizen to make an arrest in the township for a violation of N.J.S.A. 39:4-50 committed in his presence.
Passing first to consideration of the jurisdictional point raised, we hold that the township magistrate was without authority to enter that portion of the order which purported to suppress the evidence obtained following defendant's arrest. The applicable rule, R.R. 3:2A-6(a), requires that motions to suppress evidence be made only in the Superior Court or County Court for the county in which the evidence was obtained, even though the offense charged be within the jurisdiction of a municipal court. State v. Swiderski, 94 N.J. Super. 14, 19 (App. Div. 1967); cf. State v. Ferraro, 81 N.J. Super. 213, 218, 219 (Cty. Ct. 1963). Accordingly, that portion of the court's order is reversed and set aside.
We likewise disagree with the trial judge's conclusion that defendant's arrest took place when he was stopped by Carnevale and his companion, Harris.
While the order appealed from refers to "the evidence obtained after the unlawful arrest," we gather from the briefs and oral argument that the evidence suppressed consisted of the results of the Breatholizer test made by Petrone. *59 Since State v. Swiderski, supra, at p. 24, it can hardly be doubted that such a Breatholizer test constitutes a search of defendant's person and antecedently depends upon a valid seizure of his person. Whether in the instant case the challenged search and seizure was a lawful one depends primarily upon (1) when and (2) by whom the arrest of defendant took place. In determining those issues we are not confronted with the contention that probable cause for defendant's arrest was lacking. Actually, the manner of his driving, if believed by the trier of the facts, afforded ample ground for arresting him. N.J.S.A. 39:5-25. Further, the validity of the prosecution of defendant did not depend upon his arrest or upon the issuance of a warrant, but a summons was adequate to clothe the court with jurisdiction to hear the charge. R.R. 8:10-1; N.J.S.A. 39:5-25; State v. Ahrens, 25 N.J. Super. 201, 208 (App. Div. 1953); State v. Nimmo, 11 N.J. Super. 606, 607 (Cty. Ct. 1951).
In holding that the arrest of defendant took place "when the officers stopped" him, the magistrate relied upon State v. Ferraro, supra. Our examination of that case reveals no support for his conclusion.
Not every detention of a defendant amounts to an arrest, State v. Bell, 89 N.J. Super. 437, 443 (App. Div. 1965), and no absolute test exists as to when an arrest takes place. State v. Ferraro, supra, at p. 215. In State v. Romeo, 43 N.J. 188, 205 (1964), certiorari denied 379 U.S. 970, 85 S.Ct. 668, 13 L.Ed.2d 563 (1965), it was held that whether an arrest did take place depended upon "the context of the circumstances."
In 1 Schlosser, Criminal Laws of New Jersey (rev. ed. 1953), §§ 179, 180, p. 114, an arrest is defined as:
"[T]he taking of a person into the custody of the law in order that he may be held to answer for a criminal offense or be prevented from committing one.
To amount to an arrest there must be an intent to arrest, under real or pretended authority, accompanied by seizure or detention of the person which is so understood by the person arrested." *60 Black's Law Dictionary (4th ed. 1957) gives the following definition:
"ARREST. To deprive a person of his liberty by legal authority. Taking, under real or assumed authority, custody of another for the purpose of holding or detaining him to answer a criminal charge or civil demand."
And in the Restatment, Torts 2d, § 112. p. 190 (1965) an arrest is defined as:
"[T]he taking of another into the custody of the actor for the actual or purported purpose of bringing the other before a court, or otherwise securing the administration of the law."
In State v. Ferraro, supra, a shoplifting case, the court adopted the definition contained in Patterson v. United States, 192 F.2d 631, 633 (5 Cir. 1951), certiorari denied 343 U.S. 951, 72 S.Ct. 1043, 96 L.Ed. 1352 (1952), and held that the arrest took place when defendant was apprehended by the store's security officer, who showed her identification and told defendant she would have to come back into the store.
Here, we incline to the view that the arrest took place when Petrone, having determined to take defendant into custody for the purpose of the Breatholizer test, ordered him into the patrol car to be transported to borough police headquarters. Carnevale's previous direction that defendant pull over to the side of the road was investigatory only, designed to check identification and to ascertain the reason for the bizarre manner in which his car was being operated. Cf. State v. Bell, supra, at pp. 442-444. Not until after Carnevale had inquired of Petrone as to what he thought should be done did Petrone direct defendant to get into the patrol car while he himself took possession of defendant's car. From that moment on defendant's movements were restricted and he was being held in custody for the purpose of "securing the administration of the law." Restatement, Torts 2d, § 112, p. 190 (1965). The fact that defendant did not protest but agreed *61 to go along did not alter his status as a person in custody. Petrone's authority to make the arrest is not questioned.
The conclusions thus reached render it unnecessary to pass upon the remaining grounds for reversal or the Attorney General's contention that Carnevale possessed authority as a private citizen to make the arrest.
Reversed and remanded for a plenary trial.