181 N.J. Super. 455 (1981)
438 A.2d 340
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
RICKY EVANS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted September 15, 1981.
Decided October 26, 1981.
*456 Before Judges FRITZ, ARD and TRAUTWEIN.
James R. Zazzali, Attorney General of New Jersey, attorney for appellant (John J. Degnan, former Attorney General of New Jersey; George L. Schneider, Essex County Prosecutor, and Donald S. Coburn, former Essex County Prosecutor, of counsel; Kevin Rittenberry, Assistant Essex County Prosecutor, on the brief).
Respondent did not file a brief.
The opinion of the court was delivered by ARD, J.A.D.
The State appeals, on leave granted, from a search suppression order in the trial court.
The State urges that the trial judge erred in concluding that the warrantless police search of defendant's soft leather briefcase taken from defendant's hand was a violation of defendant's Fourth Amendment rights. The State also argues that even if defendant was not legally under arrest prior to the recovery of the gun, the search was proper within the "stop and frisk" concept as enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In light of our decision, we need not address the latter point.
*457 The procedural background is as follows: Defendant was charged with possession of a weapon, i.e., a Marksman Repeater 4.5-mm,.177-cal. pellet gun, in violation of N.J.S.A. 2C:39-5. He was also charged with possession of cocaine, a controlled dangerous substance, in violation of N.J.S.A. 24:21-19(a). On motion of the State the initial charge was amended to creating a hazardous or physically dangerous condition without a legitimate purpose, in violation of N.J.S.A. 2C:33-2(a)(2). The drug charge was amended to N.J.S.A. 24:21-20(b), which proscribes the use of a controlled dangerous substance.
Subsequently defendant moved to suppress the evidence, alleging an illegal search conducted without a warrant. The trial judge denied the motion as to the controlled dangerous substance but, relying on State v. DeLorenzo, 166 N.J. Super. 483 (App.Div. 1979), suppressed the gun found within the briefcase. The State then sought leave to appeal.
The facts are not complex. On May 22, 1980 two plainclothes police officers stopped an automobile because its rear lights were inoperable.[1] Defendant was a passenger in the vehicle. As the police approached the vehicle they observed defendant dropping an object outside of the car. Upon retrieving it, the police officer found it to be a small tinfoil package containing a white powder substance which, based on his experience and expertise, he believed was a controlled dangerous substance. Defendant was ordered to get out of the vehicle. The officer testified that "Mr. Evans exited the vehicle with a suitcase or briefcase type bag in his hand.... I immediately removed the bag from Mr. Evans' hand feeling that it may contain some type of a weapon." The officer then handled the outside of the bag and felt "what I thought was a weapon inside the bag, a gun." At that point the gun was removed from the briefcase.
*458 In making his findings, the trial judge was satisfied that the police officer observed defendant drop the tinfoil package to the ground, and, upon examining the package, reasonably believed that he was dealing with a narcotic drug. However, the judge felt bound by State v. DeLorenzo, supra. In suppressing the gun, the judge stated:
Now, the problem arises. The briefcase was not opened. In State against DeLorenzo, 166 Super. 43 [sic] the Court was dealing there with a police officer taking hold of a defendant's duffel bag.
The Court said that it was then in the officer's exclusive control. It was easily removable to some other place for safekeeping and a threat to the officers' lives if any, was eliminated by removing the bag from the defendant's control.
The police officer should have obtained a search warrant before searching the duffel bag. I reluctantly grant the motion.
We disagree and now reverse.
The police did not articulate that defendant was under arrest. However, we are satisfied that at the time defendant emerged from the vehicle he was legally under arrest. "In criminal law an arrest is the taking of a person into the custody of the law in order that he may be held to answer for a criminal offense or be prevented from committing one." 1 Schlosser, Criminal Laws of New Jersey (3 ed. 1970), § 11:1. We approved this definition in State v. Harbatuk, 95 N.J. Super. 54, 59-60 (App.Div. 1967). In Harbatuk we also cited a definition contained in Black's Law Dictionary (4 ed. 1957):
To deprive a person of his liberty by legal authority. Taking, under real or assumed authority, custody of another for the purpose of holding or detaining him to answer a criminal charge or civil demand.
Considering the definition of an arrest, it is certainly not necessary to announce it in any formal language. Restraint of the person and restriction of liberty are the important factors. In State v. Contursi, 44 N.J. 422 (1965), our Supreme Court found an arrest based on facts rather than language and stated:
... It is true that the record does not show that any formal language of arrest was used, but that fact is not vital. The restraint of the person and restriction of liberty of movement was sufficient, in the circumstances (where the object was not merely to question), to constitute the arrest. [at 433]
*459 In State v. Horton, 98 N.J. Super. 258 (App.Div. 1967), certif. den. 51 N.J. 393 (1968), considering another detention without formal language, we said:
Although the policemen did not use the technical word "arrest," they deprived defendant of his freedom when they apprehended him as he attempted to escape while being escorted to the police car. Restraint of a defendant's person and restriction of his freedom of movement by the police constitute an arrest. [at 261]
Here the police were satisfied that they were dealing with a controlled dangerous substance and there is no question that defendant was immediately being restrained and his freedom restricted. He was under arrest at the time he emerged from the motor vehicle.
Consequently, the full search, including the contents of the briefcase in defendant's hand, was valid as a search incident to a lawful custodial arrest. Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); State v. Dolce, 178 N.J. Super. 275, 287-290 (App.Div. 1981). It is basic to the law of search and seizure that all searches without a valid warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), reh. den. 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971). One basic exception to the requirement for a search warrant is a search incident to a lawful arrest. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Subsequent cases from Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925), through Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed. 685 (1969), reh. den. 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969), endorse the police officer's right to search persons lawfully arrested while committing crimes notwithstanding the lack of a search warrant. Most of the cases are concerned with the extent of the area beyond the person of the arrestee which might properly be searched. The outer parameters of such a search were circumscribed by Chimel v. California, supra, where the court stated:

*460 ... When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"  construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence. [395 U.S. at 762-763, 89 S.Ct. at 2039-40]
In United States v. Robinson, supra, the court held in the case of a lawful custodial arrest that a full search of the person was not only an exception to the warrant requirement of the Fourth Amendment but was also a reasonable search under that amendment since the fact of the lawful arrest established the authority to search. In Robinson a police officer arrested defendant for operating his motor vehicle after revocation of his operator's permit. The officer then proceeded to pat down defendant, feeling an object in the left breast pocket of defendant's coat. The officer reached into the pocket and pulled out the object which turned out to be a cigarette package. At that time the officer did not know the contents of the package, and upon opening the cigarette pack found 14 gelatin capsules of white powder which subsequent analysis proved to be heroin.
The court specifically approved the "full" search as compared with the "frisk" permitted in Terry v. Ohio, supra. The opinion of Justice Rehnquist concluded:
... Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that Jenks [the police officer] did not indicate any subjective fear of the respondent or that he did not himself suspect that respondent was armed. Having in the course of a lawful search come upon the crumbled package of cigarettes, he was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them as "fruits, instrumentalities, or contraband" probative of criminal conduct. [414 U.S. at 236, 94 S.Ct. at 477; citations omitted; footnotes omitted]
The United States Supreme Court held, in New York v. Belton, ___ U.S. ___, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), *461 that the search of an individual's jacket located in the passenger compartment of the car was a valid search incident to a lawful arrest and within the arrestee's immediate control within the meaning of Chimel v. California, supra. We are satisfied the same rationale applies in this case.
In Belton the police stopped an automobile for speeding and, in the course of the investigation, smelled marijuana in the car and observed an envelope associated with marijuana on the floor of the vehicle. The occupants of the vehicle were arrested and searched. The police then searched the rear passenger compartment of the vehicle which contained a jacket belonging to one of the occupants. They found cocaine in one of the jacket pockets. In examining the legality of this type of search, the court held that after a lawful arrest the police may search the passenger compartment of the automobile and examine the contents of any container found therein.
Here, at the time of the defendant's arrest, the briefcase was in his hand. Had the briefcase been left in the car, it would have been proper for the police to remove it and search it under the holding of New York v. Belton, supra. If the latter type search be permissible, we find no arrogance or overreaching on the part of the police officers in the circumstances of this case. The police officer was correct in exercising due caution in examining the contents of the bag for his own protection. In State in the Interest of H.B., 75 N.J. 243 (1977), former Chief Justice Hughes catalogued the tremendous proliferation of handguns in today's society and emphasized the constant danger these guns present to law enforcement officers. In State v. Patino, 83 N.J. 1 (1980), Justice Clifford stated:
The Supreme Court has sanctioned searches incident to arrest primarily as a method of protecting the police officer and, to a lesser extent, as a means of preventing destruction of evidence. E.g., Chimel v. California, supra, 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. The scope of such searches is authoritatively defined in Chimel as encompassing weapons and evidence on the *462 arrestee's person and in the area within his immediate control  the area from within which he might gain possession of a weapon or destructible evidence. [at 8]
In a most recent case, State v. Young, 87 N.J. 132, 137 (1981), Justice Pashman made a parenthetical comment in a footnote about a similar search. In Young the defendant stepped out of the car carrying an overnight bag. The trooper patted down defendant and searched the overnight bag. The footnote stated:
[1] This search is not at issue on this appeal and, at least arguably, was valid as a warrantless search incident to arrest.
Here, unlike State v. Young, supra, we are squarely faced with the issue. Considering the personal safety of police officers in executing their duties when dealing with occupants of motor vehicles, we have no difficulty in sustaining the legality of this search as incidental to a lawful arrest well within the circumscribed boundaries established in Chimel v. California, supra.
The facts in State v. DeLorenzo, supra, were substantially different. Although the defendant was at police headquarters, he was not under arrest. The warrantless search of his closed duffle bag did not come within any of the exceptions of the general rule requiring a valid warrant. The search could not be justified under the plain view or consent doctrines. The police had no basis to believe the defendant was armed, and therefore, the "stop and frisk" exception approved in Terry v. Ohio, supra, did not apply. There was no basis to find the existence of "exigent circumstances." We suppressed the evidence in DeLorenzo because of the absence of a valid exception to the warrant requirement. In the instant case, as indicated, a valid exception existed.
The order granting defendant's motion to suppress the evidence is reversed, and the matter is remanded to the trial court for proceedings consistent with this opinion. Jurisdiction is not retained.
NOTES
[1] During the course of the hearing on the motion to suppress, defendant did not dispute the right of the officers to stop the vehicle.