183 N.J. Super. 13 (1981)
443 A.2d 214
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DONALD KEARNEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 30, 1981.
Decided December 31, 1981.
*15 Before Judges BISCHOFF, KING and POLOW.
Stanley C. Van Ness, Public Defender of New Jersey, for appellant (Claire Drugach, Assistant Deputy Public Defender, of counsel and on the brief).
James R. Zazzali, Attorney General of New Jersey, for respondent (Emily Gosnell, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by KING, J.A.D.
On this appeal defendant contends that the Law Division judge erred in denying his motion to suppress evidence seized in a series of warrantless searches.
On October 21, 1977 at 5:30 p.m. State Trooper Edward Hess was waiting in a gas line at the 12 S Service Area of the New Jersey Turnpike at Secaucus. Trooper Hess noticed that the 1973 Chevrolet four-door sedan behind his car in the gas line did not have an inspection sticker. After the Chevrolet was serviced, the driver pulled it over in front of the restaurant and started working on the motor. Both the driver, James Bundi, and a passenger, Bostick, were looking under the hood. Another passenger, the defendant, was sitting in the right front seat of the car.
*16 Trooper Hess approached Bundi and asked him for his license and registration. Bundi produced his registration but had to open the trunk of the automobile to get his valid driver's license which he presented to the trooper. While the trunk was open Trooper Hess observed an open brown leather camera case containing small plastic vials of orange fluid. Hess testified that from his experience at narcotics training school and numerous previous arrests he knew this particular type of jar to be a container for methadone. Although he did not know for certain that these vials contained methadone, he had on ten previous occasions seen similar jars containing this drug.
After observing inside the trunk Trooper Hess went to the right front of the car to investigate the window where the inspection sticker should have been. It was at this time that he first saw defendant. While standing three to four feet away from defendant, with the door of the automobile open, the trooper noticed that he was "extremely nervous." Defendant was so nervous and his hands were shaking so much that he was unable to get a match to the cigarette he was trying to light. Trooper Hess requested that defendant get out of the automobile and then attempted to pat him down for "self-protection." As Hess stated:
I patted him around the waist and I patted up around the chest. There was a bulge in his pocket. When I hit this bulge he backed two steps and backed toward the car.
Hess then attempted to pat down defendant again, with the same result. Unable to complete the pat-down Hess reached into defendant's left front chest pocket, the area where the bulge was. He pulled out two glassine packets of white powder. Believing this substance to be cocaine, the trooper arrested defendant and searched his person further. He found nothing. Hess then searched defendant's jacket, which he found "on the front seat of the car right next to where Mr. Kearney was standing." In the jacket he found three marijuana cigarettes. Hess then placed the other two subjects, Bundi and Bostick, under arrest and searched the entire car and the trunk. He *17 went through the soft brown camera bag, which was open and which he had seen earlier in the trunk. He found 32 white vials, all containing methadone. He also found some heroin and cocaine within a closed film container in the camera bag.
Following indictment, defendant moved to suppress the evidence found on his person and in the car. Judge Walsh, in his bench opinion, stated that he found Hess believable. He felt that the trooper acted reasonably under the circumstances. The judge said that the pat-down was reasonable because Hess had a well-grounded suspicion that a crime, possession of drugs, was being committed. He held that the arrest after the productive pat-down was justified and that the search of the pocket of defendant's jacket in the automobile was valid as incident to an arrest. He found that the seizure of the methadone in the trunk fell within the "plain view" exception to the warrant requirement. The heroin found in the empty film container in the camera case was considered to be the product of a valid inventory search. In the alternative, he concluded that both narcotic substances could be found to be legally seized as products of a search incident to arrest.
Defendant thereafter pled guilty to count 1 charging illegal possession of methadone, in violation of N.J.S.A. 24:21-20(A)(1). Counts 2 and 3, charging possession of heroin and cocaine, were dismissed.
Defendant first contends that the pat-down of his body was unconstitutional as it was not based on a reasonable suspicion that he was armed and dangerous. The law is settled that a limited frisk is constitutionally permissible even if there is not probable cause sufficient to justify an arrest because an individual is armed with a weapon. Terry v. Ohio, 392 U.S. 1, 24-26, 88 S.Ct. 1868, 1881-1882, 20 L.Ed.2d 889 (1968); State v. Dilley, 49 N.J. 460, 467-468 (1967). In Dilley the court stated (at 468) that the test used should be the reasonableness of the frisk in the totality of the circumstances. In determining the "totality of the circumstances" weight must be given to the practical consideration, *18 training and experience of the police officer. State v. Dilley, supra at 462-463; State v. Mark, 46 N.J. 262, 271-273 (1966); State v. Brown, 160 N.J. Super. 227, 232-233 (Law Div. 1978). In the instant case the frisk of defendant was supported by the totality of the circumstances. The trooper had a reasonable suspicion that the trunk of the vehicle contained methadone. This suspicion was grounded on numerous previous experiences with methadone identification and arrests. Hess' testimony shows that he was a seasoned police officer who was well-qualified to reasonably conclude that the open trunk contained contraband. In addition, defendant was excessively nervous as the trooper approached. Hess reasonably concluded that defendant's nervousness was related to the narcotics he had seen in the trunk of the vehicle and that defendant possibly might use a weapon for either flight or attack. In determining whether an officer acted reasonably in the circumstances due weight must be given "to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry v. Ohio, supra, 392 U.S. at 27, 88 S.Ct. at 1883.
Defendant contends that the intrusion into his shirt pocket following the pat-down was beyond the permissible scope of a Terry pat-down. Kearney argues that since the trooper's pat-down did not uncover any hard object which could be a weapon, the trooper could not have reasonably feared for his safety and should not have reached into the shirt pocket to determine what was causing the noticeable bulge. This argument has been dealt with in State v. Ransom, 169 N.J. Super. 511 (App.Div. 1979), in which this court stated:
Clearly, a police officer does not need to perceive tactile recognition of a firearm before he may protect himself further by insisting on deliverance of the suspected weapon. It is not even necessary for him to identify by species the object of his concern, so long as the fear for his safety resulting from the pat-down is reasonable. A police officer is not required by his occupation or the Constitution of the United States to take unnecessary risks in the performance of his duties.... [at 521-522.]
It is also important to note that by pulling away each time Trooper Hess attempted to touch the bulge in his pocket, defendant *19 made it almost impossible for the trooper to tactilely recognize the object. As pointed out in the State's brief, "the shape of the object indicated nothing in and of itself to show that it was not a weapon or other dangerous instrumentality. The object could have been a folding knife as easily as two packets of narcotics." Since the trooper was unable to ascertain if Kearney was concealing a weapon, he was justified in reaching into his shirt pocket to remove its contents. The motion to suppress the contraband found in Kearney's shirt pocket was properly denied.
Defendant argues that marijuana seized during a search of his jacket, which was located on the front seat of the car, should be suppressed. Defendant was outside the automobile at the time. Kearney advances alternate theories for invalidating the search of the jacket following his arrest.
The first theory advanced is that since the seizure of the packets of narcotics from defendant's shirt pocket was invalid, the fruits of the subsequent arrest and the search of defendant's jacket as incident to that arrest are tainted. However, since the frisk of defendant and the confiscation of the narcotics on his person were valid, the marijuana in the coat was not tainted evidence.
Defendant's second theory, concerning the search of his jacket, is that it cannot be upheld as incident to an arrest because such a search must be limited in scope to the area under the immediate control of defendant. At the time of Kearney's arrest he was standing outside the car and the jacket was draped over the front seat of the car.
The scope of a valid search incident to arrest has been recently expanded by New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The facts in Belton are quite analogous to the facts presented on this appeal. In Belton a vehicle in which defendant was a passenger was stopped by a state trooper for speeding. While speaking with the occupants of the car the officer smelled burnt marijuana. The trooper *20 ordered all the occupants from the vehicle and arrested them for unlawful possession of marijuana. Following the arrest the trooper searched the passenger compartment of the car; he found a jacket belonging to Belton, unzippered the pockets and discovered cocaine. Belton challenged the validity of the search of his jacket as incident to arrest and the Supreme Court held that the search did not violate the Fourth or Fourteenth Amendments. In explaining the decision, the court noted that it was necessary to establish a "workable, bright-line" rule for search-incident cases. The rule announced by the court was:
When a policeman has made a custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment.... [453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 775.]
In a footnote the court defined "container" as "any object capable of holding another object [including] luggage, boxes, bags, clothing and the like." Id. 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 775; see, also, State v. Evans, 181 N.J. Super. 455, 461 (App.Div. 1981) (search of brief case in defendant's hand); State v. Young, 87 N.J. 132, 137 (1981) (search of overnight bag in defendant's hand).
The impact of Belton in this State is uncertain. In a footnote our Supreme Court recently said that "we leave to future consideration" whether search-incident cases would reflect the wider latitude allowed by Belton. State v. Alston, 87 N.J. 531, 555, n. 15 (1981).
We follow Belton in this case, to the extent its philosophy may be applicable, and do not find State v. Welsh, 84 N.J. 346 (1980), controlling upon us. In Welsh the search behind the dashboard of defendant's vehicle was held invalid under then federally-applicable Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), because "[a]t the time of the search of defendant's car he was handcuffed and seated in a police car parked to the rear of his own vehicle. Under these circumstances he could not reach even into other areas of the police car, let *21 alone into his own vehicle." Id. at 355. In the present case Trooper Hess testified that he searched "the jacket on the front seat of the car right next to where Mr. Kearney was sitting."
Defendant next argues that the search for and seizure of contraband found in the camera case located in the trunk of the automobile was constitutionally invalid and did not fall within any exceptions to the warrant requirement. The State meets this argument by contending that defendant had no standing to challenge the search or seizure since he failed to establish either a possessory interest in the leather case or an expectation of privacy in the trunk of the car. Cited by the State are federal cases which make a "reasonable expectation of privacy" of paramount importance in creating standing. Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). However, in State v. Alston, 87 N.J. 531 (1980), the court declined to follow federal standards. Instead, it held (at 547) that in New Jersey "a person's ownership of or possessory interest in personal property seized by law enforcement officials is quite sufficient to cover standing to claim that personal Fourth Amendment privacy rights have been violated." The court also held that New Jersey will continue to adhere to the automatic standing rule in cases where the defendant is charged with an offense in which possession of the seized evidence at the time of the contested search is an essential element of guilt. Id. at 548-549. Since Kearney had been indicted for three crimes of possession he had standing under Alston to challenge the search and seizure of the camera bag in the trunk of the car.
The trial judge invoked different theories to uphold the seizure of the contraband found in the camera case. Citing Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the judge found the search resulting in the seizure of *22 methadone justified as falling within the "plain view" doctrine. He then upheld the seizure of narcotics found in the closed film container in the camera case as the product of a valid inventory search. Defendant challenges both these findings.
Defendant argues that the seizure of methadone was invalid since the officer did not know that the vials in the open camera case contained contraband and therefore had no probable cause to search the case as required by the plain view doctrine. Defendant also argues that the search of the camera case after defendant's arrest was not an inadvertent viewing but a purposeful inspection for investigative purposes and improper under the plain view doctrine.
Defendant's arguments are unpersuasive. The confiscation of the methadone meets the requirements in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), for "plain view" seizures. In Coolidge a plurality of the Supreme Court permitted seizure of evidence without a warrant under the "plain view" doctrine when police were lawfully in a position to obtain the view, the discovery of the evidence was inadvertent, and the seizure was based on probable cause to believe the item was related to criminal activity. (At 466, 91 S.Ct. at 2038). The facts surrounding the seizure of the methadone show that Trooper Hess had a lawful right to obtain a view of the contents of the automobile's trunk. The trooper had probable cause to believe that the driver of the vehicle in which defendant was a passenger was committing a traffic violation by not displaying an inspection sticker. N.J.S.A. 39:8-6. Because of the violation the trooper lawfully requested the driver to produce his license and registration. N.J.S.A. 39:3-29. Pursuant to this request the driver of the vehicle opened his trunk in front of the trooper and thereby brought the contents of the trunk into "plain view." The facts also support the inadvertence of Trooper Hess' discovery. When the trooper asked the driver of the car to produce his license he did so without *23 pre-existing knowledge that it would be kept in the trunk near an open camera case brimming with narcotics. The third Coolidge requirement that the article seized be of incriminating character is also present. The trooper testified that he was acquainted with both methadone and its customary containers from prior arrests and narcotics training school. Therefore, the warrantless search of the camera case and seizure of the methadone was properly held to fall within the "plain view" exception to the Warrant Clause.
The defendant also argues that the judge erred in holding the trooper justified in searching the camera case as part of an inventory search. The search of the bag turned up a film container which held a tin foil packet of cocaine and a glassine bag of heroin. Trooper Hess had probable cause to seize the camera bag found in the trunk since he had previously sighted vials of narcotics in it. Because there was a valid reason to take custody of the open camera case and its visible contents at the time of the defendant's arrest, the police were entitled to identify the bag's contents incident to the defendant's arrest. As stated by LaFave in his respected treatise:
... There is authority that whenever the defendant's suitcase or some similar container was properly impounded by the police at the time of his arrest or otherwise lawfully came into the custody of the police, an item-by-item inventory of its contents at the station is permissible. [LaFave, Search and Seizure, § 5.5 at 358 (1978)]
We conclude that the trooper was justified in seizing and searching the film container in the camera bag for additional narcotics under the circumstances, since drugs had been found on defendant's person, in his coat on the front seat, and in the open camera case. This final aspect of the search was not so intense in scope as to violate the Warrant Clause of the federal constitution or our State Constitution. We find the entire chain of searches valid and affirm.
Affirmed.