909 A.2d 1179 (2006)
388 N.J. Super. 629
STATE of New Jersey, Plaintiff-Respondent,
v.
Darnell BELL, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 3, 2006.
Decided November 17, 2006.
Yvonne Smith Segars, Public Defender, attorney for appellant (William Welaj, Designated Counsel, of counsel and on the brief).
Theodore J. Romankow, Union County Prosecutor, attorney for respondent (Steven J. Kaflowitz, Assistant Prosecutor, of counsel and on the brief).
Before Judges LINTNER, S.L. REISNER and C.L. MINIMAN.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
This appeal requires us to address for the first time the issue of whether evidence of a defendant's confession, made at the police station, must be suppressed because *1180 the police arrested him pursuant to an arrest warrant but without a search warrant for the third party's residence in which they found him. Applying New York v. Harris, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990), we conclude that the illegal search does not justify suppression of defendant's confession, and we affirm his conviction.

I
Following a jury trial, Darnell Bell was convicted of murder and related offenses. His conviction was affirmed on appeal, State v. Bell, No. A-4932-99T4 (App.Div. October 10, 2002), certif. denied, 175 N.J. 433, 815 A.2d 478 (2003). He now appeals from a trial court order denying his petition for post-conviction relief (PCR).
The details of the crime are set forth in our earlier opinion and need not be repeated here. For purposes of this opinion, these are the pertinent facts. Elizabeth police officers obtained a valid warrant for defendant's arrest in connection with the shooting death of Stephanie Hosley. When the police were unable to find defendant at his residence, they went to defendant's aunt's house at 933 Olive Street, where they had reason to believe defendant stayed on occasion. They did not have a warrant to search for defendant at this address.
On this record, there is a factual dispute whether the aunt voluntarily admitted the police or whether they entered without her consent. There is also an issue as to where defendant lived. In support of his PCR petition, defendant submitted the report of an investigator who had interviewed the aunt. According to the report, the aunt told the investigator that when she opened the door, the police asked for defendant and then "just walked in," although she told them that defendant was not "home." Although there is some evidence that defendant lived at 933 Olive Street, and his certification in support of his PCR does not deny that he lived there, we assume for purposes of this opinion that the house was not his residence for Fourth Amendment or State constitutional purposes.[1]
The police did not discover any evidence of the crime during their search. However, they found defendant hiding in the attic, arrested him, and brought him to police headquarters. Three hours later, he signed a waiver of his Miranda[2] rights and confessed to shooting the victim. Following a pretrial evidentiary hearing at which defendant and the arresting officer testified, Judge Barisonek held that the confession was voluntary and was not the product of police coercion or other improper tactics.[3] We upheld that ruling on defendant's direct appeal.
*1181 In his PCR petition, defendant's principal contention was that his confession was the result of an arrest made pursuant to an unlawful search and that his trial counsel was ineffective for failing to raise that issue at the Miranda hearing. In a lengthy, detailed and cogent oral opinion, placed on the record on February 22, 2005, Judge Barisonek rejected that contention, holding that under New York v. Harris, supra, an otherwise lawful arrest made by entering the premises without a search warrant did not justify suppression of defendant's confession.

II
On this appeal, defendant raises the following arguments:
POINT I: THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST CONVICTION RELIEF SINCE HE WAS DENIED THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE TRIAL AND APPELLATE LEVELS.
A. FACTUAL INTRODUCTION.
B. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY HEARINGS AND PETITIONS FOR POST CONVICTION RELIEF.
C. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL BASED UPON A FAILURE TO PURSUE A CLAIM INVOLVING A MOTION TO SUPPRESS.
D. SINCE THE ORAL AND WRITTEN STATEMENTS TAKEN BY THE POLICE FROM THE DEFENDANT WERE IMPROPERLY OBTAINED BECAUSE THEY WERE THE DIRECT RESULT OF AN EARLIER UNLAWFUL SEARCH OF A THIRD PARTY'S RESIDENCE WHERE THE DEFENDANT WAS APPREHENDED, THE STATEMENTS WOULD HAVE BEEN SUPPRESSED HAD AN APPROPRIATE MOTION BEEN MADE AT TRIAL, AND THE COURT ERRED IN RULING TO THE CONTRARY.
E. IN THE EVENT NEW YORK V. HARRIS IS DEEMED APPLICABLE TO THE PRESENT CASE, THE NEW JERSEY CONSTITUTION SHOULD BE INTERPRETED TO PROVIDE GREATER PROTECTION FOR NEW JERSEY RESIDENTS THAN THE COMPARABLE PROVISION OF THE FEDERAL CONSTITUTION.
POINT II: IN THE EVENT THE COURT DOES NOT CONCLUDE THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST CONVICTION RELIEF, THE DEFENDANT IS AT LEAST ENTITLED TO A REMAND FOR AN EVIDENTIARY HEARING TO DETERMINE THE MERITS OF HIS CONTENTION THAT HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF TRIAL COUNSEL'S FAILURE TO CALL TWO DEFENSE WITNESSES AT TRIAL.
POINT III: THE DEFENDANT'S CONTENTION THAT HE WAS DENIED THE RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AND APPELLATE *1182 COUNSEL REGARDING TRIAL COUNSEL'S FAILURE TO FILE A MOTION TO SUPPRESS BASED UPON THE IMPROPER ENTRY BY THE POLICE INTO THE RESIDENCE IN QUESTION AS WELL AS TRIAL COUNSEL'S FAILURE TO PRESENT CERTAIN DEFENSE WITNESSES AT TRIAL WAS NOT PROCEDURALLY BARRED.
We agree with defendant that his PCR contentions are not procedurally barred, but we also conclude that, except as discussed herein, his remaining contentions are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).[4]
Defendant's argument concerning the validity of his confession raises a novel issue which we address. In arguing that his confession should be suppressed as the "fruit" of an illegal search, defendant primarily relies on Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), both cases involving suppression of evidence seized during a warrantless entry to a home.
In Payton, the Supreme Court held unconstitutional a New York law authorizing police to enter a suspect's home without either a search warrant or an arrest warrant if they had probable cause to believe the suspect had committed a felony. Payton, supra, 445 U.S. at 603, 100 S.Ct. at 1387, 63 L.Ed.2d at 661. The Court held that an arrest warrant was required. Id. at 576, 100 S.Ct. at 1374-75, 63 L.Ed.2d at 644. However, the Court rejected the view that a search warrant was also required to effectuate an arrest in the suspect's home:
If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.
[Id. at 602-03, 100 S.Ct. at 1388, 63 L.Ed.2d at 660-61.]
See also State v. Jones, 143 N.J. 4, 12-13, 667 A.2d 1043 (1995). The Court also noted that the unlawful seizure of a defendant does not require that he be released. Payton, supra, 445 U.S. at 592, 100 S.Ct. at 1383, 63 L.Ed.2d at 655, n. 34. "The issue is not whether a defendant [arrested without a warrant] must stand trial, because he must do so even if the arrest is illegal." Ibid. See also United States v. Crews, 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537, 547 (1980) ("An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution. . . . ").
In Steagald, the issue was "whether, under the Fourth Amendment, a law enforcement officer may legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant." Steagald, supra, 451 U.S. at 205, 101 S.Ct. at 1644, 68 L.Ed.2d at 41. The Court held that, absent *1183 exigent circumstances, a search warrant was required. Id. at 205-06, 101 S.Ct. at 1644, 68 L.Ed.2d at 41. In Steagald, police entered the defendant's residence in order to search for Ricky Lyons, for whom they had an arrest warrant. While in the house searching for the suspect, they discovered cocaine, which was used in successfully prosecuting Steagald. Differentiating between the purpose of an arrest warrant, which protects persons against seizure, and a search warrant, which protects the privacy of their homes against unjustified invasion, the Court held that the arrest warrant for Lyons was not sufficient to justify a search of Steagald's house without a search warrant:
Thus, while the warrant in this case may have protected Lyons from an unreasonable seizure, it did absolutely nothing to protect petitioner's privacy interest in being free from an unreasonable invasion and search of his home. Instead, petitioner's only protection from an illegal entry and search was the agent's personal determination of probable cause. In the absence of exigent circumstances, we have consistently held that such judicially untested determinations are not reliable enough to justify an entry into a person's home to arrest him without a warrant, or a search of a home for objects in the absence of a search warrant. We see no reason to depart from this settled course when the search of a home is for a person rather than an object.
[Id. at 213-14, 101 S.Ct. at 1648, 68 L.Ed.2d at 46. (internal citations and footnote omitted).]
The Court distinguished language in Payton approving entry into the home of the suspect who was the subject of the arrest warrant, noting that the right of the police to seize the suspect did not also authorize their invading the privacy of a third person's home. Id. at 214, 101 S.Ct. at 1648-49, 68 L.Ed.2d at 46-47, n. 7.
We agree with defendant that, viewing the evidence on the PCR petition in the light most favorable to him, the police had no authority to enter his aunt's house to search for defendant without a search warrant. But the critical issue, on which we cannot agree with defendant, is the remedy for such an unlawful search.
Defendant contends that his arrest was unlawful because it was the product of an unlawful search, and hence his confession should be suppressed as the product of an unlawful arrest. We find no merit in this contention. Defendant's arrest was not unlawful, as it was authorized by an arrest warrant. Consequently, the cases on which defendant relies, concerning suppression of confessions that result from unlawful arrests, are not on point. See Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); State v. Chippero, 164 N.J. 342, 753 A.2d 701 (2000); State v. Worlock, 117 N.J. 596, 569 A.2d 1314 (1990). As the Supreme Court observed in Payton, the fact that defendant's person was seized during an unlawful search does not preclude the State from prosecuting him. Payton, supra, 445 U.S. at 592, 100 S.Ct. at 1383, 63 L.Ed.2d at 654, n. 34. Nor does it transform his eventual confession into the "fruit of the poisonous tree," subject to suppression under Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963). See also Brown, supra, 422 U.S. at 591-92, 95 S.Ct. at 2256, 45 L.Ed.2d at 420.
In New York v. Harris, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990), the Supreme Court addressed a case in which the police illegally entered defendant's home in order to effect his arrest for which they had probable cause. Id. at 15, 110 *1184 S.Ct. at 1642, 109 L.Ed.2d at 19. Thus, as in this case, the arrest was otherwise legal, although the entry into the house without a search warrant violated Payton. Id. at 21, 110 S.Ct. at 1644-45, 109 L.Ed.2d at 22. In Harris, the Court declined to suppress defendant's confession:
[W]e decline to apply the exclusionary rule in this context because the rule in Payton was designed to protect the physical integrity of the home; it was not intended to grant criminal suspects, like Harris, protection for statements made outside their premises where the police have probable cause to arrest the suspect for committing a crime.
[Id. at 17, 110 S.Ct. at 1643, 109 L.Ed.2d at 20.]
Distinguishing Payton, the Court stated:
Nothing in the reasoning of that case suggests that an arrest in a home without a warrant but with probable cause somehow renders unlawful continued custody of the suspect once he is removed from the house. There could be no valid claim here that Harris was immune from prosecution because his person was the fruit of an illegal arrest. United States v. Crews, 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980). Nor is there any claim that the warrantless arrest required the police to release Harris or that Harris could not be immediately rearrested if momentarily released. Because the officers had probable cause to arrest Harris for a crime, Harris was not unlawfully in custody when he was removed to the station house, given Miranda warnings, and allowed to talk. For Fourth Amendment purposes, the legal issue is the same as it would be had the police arrested Harris on his doorstep, illegally entered his home to search for evidence, and later interrogated Harris at the station house. Similarly, if the police had made a warrantless entry into Harris' home, not found him there, but arrested him on the street when he returned, a later statement made by him after proper warnings would no doubt be admissible.
[Id. at 18, 110 S.Ct. at 1643, 109 L.Ed.2d at 20-21.]
The Court likewise distinguished Brown and Dunaway, because they involved confessions following illegal arrests:
In each of those cases [including Brown and Dunaway], evidence obtained from a criminal defendant following arrest was suppressed because the police lacked probable cause. The . . . cases stand for the familiar proposition that the indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality. We have emphasized, however, that attenuation analysis is only appropriate where, as a threshold matter, courts determine that "the challenged evidence is in some sense the product of illegal governmental activity." United States v. Crews, supra, 445 U.S. at 471, 100 S.Ct. at 1250.
Harris' statement taken at the police station was not the product of being in unlawful custody. Neither was it the fruit of having been arrested in the home rather than someplace else. The case is analogous to United States v. Crews, supra. In that case, we refused to suppress a victim's in-court identification despite the defendant's illegal arrest. The Court found that the evidence was not "`come at by exploitation' of . . . the defendant's Fourth Amendment rights," and that it was not necessary to inquire whether the "taint" of the Fourth Amendment violation was sufficiently attenuated to permit the introduction of the evidence. 445 U.S. at 471, 100 S.Ct. at 1250, 63 L.Ed.2d at *1185 537. Here, likewise, the police had a justification to question Harris prior to his arrest; therefore, his subsequent statement was not an exploitation of the illegal entry into Harris' home. . . .
[T]he statement, while the product of an arrest and being in custody, was not the fruit of the fact that the arrest was made in the house rather than someplace else.
[Id. at 18-20, 110 S.Ct. at 1643-44, 109 L.Ed.2d at 21-22 (citation omitted).]
The Court also concluded that suppressing the confession would not serve the underlying policy behind the exclusionary rule:
To put the matter another way, suppressing the statement taken outside the house would not serve the purpose of the rule that made Harris' in-house arrest illegal. The warrant requirement for an arrest in the home is imposed to protect the home, and anything incriminating the police gathered from arresting Harris in his home, rather than elsewhere, has been excluded, as it should have been; the purpose of the rule has thereby been vindicated. We are not required by the Constitution to go further and suppress statements later made by Harris in order to deter police from violating Payton.

[Id. at 20, 110 S.Ct. at 1644, 109 L.Ed.2d at 22.]
We find Harris on point here. As in Harris, the police had probable cause to arrest Bell. In fact, they had an arrest warrant. As in Harris, nothing in the circumstances of defendant's arrest or confession suggests that the confession was the "product" of his having been arrested inside his aunt's house rather than on the street. See id. at 19, 110 S.Ct. at 1644, 109 L.Ed.2d at 21. Hence, there is no basis to suppress the confession. As the Court held in Harris, an "attenuation" test is not required. Id. at 19, 110 S.Ct. at 1643-44, 109 L.Ed.2d at 21. There is no need to engage in further analysis of the circumstances to determine whether the connection between the illegal entry and the confession was sufficiently attenuated as to vitiate the impact of the warrantless search.
We also reject defendant's contention that we should reach a different conclusion under the New Jersey Constitution.
First, although our Supreme Court has not addressed the issue, we note that in a somewhat different context, the Court cited Harris with approval in State v. Perry, 124 N.J. 128, 150, 590 A.2d 624 (1991). In Perry, the Court held that police lawfully entered an unlocked abandoned building to search for the defendant, in order to bring him to headquarters for a previously-scheduled, voluntary polygraph examination in connection with a murder investigation. Id. at 147-50, 590 A.2d 624. When they found Perry, he was in possession of illegal drugs in plain view, thus justifying his arrest on drug charges. Ibid. After police brought Perry to the station and he voluntarily took, and failed, the polygraph, he confessed to the murder. Id. at 140, 590 A.2d 624. The Court rejected Perry's claim that his counsel was ineffective for failing to move to suppress the confession as the "fruit" of the alleged illegal seizure of the drugs. Id. at 150, 590 A.2d 624. Citing Harris, the Court noted that "Perry, although technically under arrest for events occurring at [the abandoned building], voluntarily made statements and kept a scheduled interview unrelated to his drug arrest." Ibid. The Court further reasoned that even if the search had been illegal, "the separately-scheduled [polygraph] interview was `sufficiently independent to dissipate the taint *1186 of [any alleged] illegal conduct.'" Ibid. (citation omitted).
Second, although we have not previously addressed Harris, in State v. Miller, supra, we followed Steagald and Payton in holding that, absent special circumstances, Article I, paragraph seven, of the New Jersey Constitution prohibits police from entering a third party's residence without a search warrant for the purpose of searching for a suspect for whom they have an arrest warrant. Miller, supra, 342 N.J.Super. at 495, 777 A.2d 348. Accordingly, in Miller we affirmed a trial court decision suppressing evidence of contraband discovered during such a warrantless search. Id. at 500, 777 A.2d 348. Notably, in Miller we reasoned that
[w]e have no reason to perceive that the historical, value-laden underpinnings of Article I, paragraph seven, of the New Jersey Constitution are in any material respect different from those that undergird the Fourth Amendment to the United States Constitution.
[Id. at 489, 777 A.2d 348.]
We are not convinced by defendant's argument that a rule requiring suppression of defendant's confession would appreciably further the values undergirding our State's constitutional prohibition against warrantless searches. We find the Harris Court's reasoning persuasive. In this case, the police did not find any contraband in defendant's aunt's house; they only found defendant, whom the police had a lawful right to arrest pursuant to a warrant. Suppressing defendant's confession, made three hours later at the police station, would do little to vindicate the rule against warrantless searches. We agree with Harris that, while suppressing evidence of contraband found in the home would be justified, "[w]e are not required by the Constitution to go further and suppress statements later made by [Bell] in order to deter police from violating Payton." Harris, supra, 495 U.S. at 20, 110 S.Ct. at 1644.
Since defendant's suppression argument is without merit, his trial counsel was not ineffective in failing to raise the issue.
Affirmed.
NOTES
[1] The State does not challenge defendant's standing to assert rights under either the Fourth Amendment or the New Jersey Constitution. Therefore, although we recognize the different tests for standing in search and seizure cases under Federal and State constitutional law, we need not address the standing issue in this case. Cf. State v. Cleveland, 371 N.J.Super. 286, 295-96, 852 A.2d 1150 (App. Div.), certif. denied, 182 N.J. 148, 862 A.2d 57 (2004); State v. Miller, 342 N.J.Super. 474, 478-79, 777 A.2d 348 (App.Div.2001).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] At that hearing, and in his PCR petition, defendant did not claim that the police beat or otherwise abused him during the course of the arrest at his aunt's house. There is also no evidence that the police were abusive to anyone else in the house. Hence, there is no factual basis to infer that the illegality of the police entry into the house in any way affected the voluntariness of defendant's confession three hours later at the police station. We need not consider whether, under some circumstances, abusive police conduct during an illegal search might affect the voluntariness of a confession following a lawful arrest made during the search. See State v. Chippero, 164 N.J. 342, 357-58, 753 A.2d 701 (2000) (discussing flagrancy of police misconduct as it relates to a confession following an illegal arrest).
[4] We reject defendant's claim that his trial attorney should have called the two women who lived in the house at 933 Olive Street as trial witnesses, in order to impeach the credibility of the arresting officers concerning the circumstances under which they gained entrance to the house. At the trial, the officers were not asked, either on direct or cross-examination, whether either of the women voluntarily admitted them to the house. Consequently, the women's proposed testimony would have been irrelevant.