**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0310-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHARLIE ALVARADO,
a/k/a JOSE SANCHEZ,

    Defendant-Appellant.

_____

    Submitted March 12, 2025 – Decided August 7, 2025

    Before Judges Currier and Torregrossa-O'Connor.

    On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 22-11-1375.

    Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the briefs).

    Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, and Khyzar Hussain, Legal Intern, on the brief).

PER CURIAM

Defendant Charlie Alvarado, convicted and sentenced after pleading guilty to one count of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), appeals the portion of the trial court's June 8, 2023 order denying in part defendant's motion to suppress evidence obtained after an illegal motor vehicle search. In that order, the court suppressed a handgun found after a warrantless search of the car, but denied suppression of evidence defendant claimed was derived from the unconstitutional search. Defendant's sole argument on appeal challenges the trial court's finding that, despite the illegality of the initial search, defendant's subsequent statements to police that formed the basis for a subsequent search warrant, which led to the seizure of additional firearms, were sufficiently attenuated from the initial illegality.

We have carefully reviewed the record in light of applicable legal principles, and we affirm.

I.

An indictment charged defendant with two counts of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), third-degree possession of prohibited weapons and devices, N.J.S.A. 2C:39-3(n), second-degree certain persons prohibited from possessing weapons, N.J.S.A. 2C:39-

7(b)(1), second-degree transporting a manufactured firearm without a serial number, N.J.S.A. 2C:39-9(n), third-degree receiving stolen property, N.J.S.A. 2C:20-7(a), third-degree money laundering, N.J.S.A. 2C:21-25(a), four counts of fourth-degree possession of a large capacity magazine, N.J.S.A. 2C:39-3(j), fourth-degree possession of ammunition without a permit, N.J.S.A. 2C:58-3.3(b), and fourth-degree possession of drug paraphernalia with intent to distribute, N.J.S.A. 2C:36-3. In December 2022, defendant filed a motion to suppress evidence seized after his car was stopped and searched.[1]

We need not address in detail the facts surrounding the initial stop and search as it is not the subject of this appeal, and we distill from the motion record the following relevant facts that were largely undisputed.

On the afternoon of September 5, 2022, defendant was driving his uncle's vehicle with heavily tinted windows when he backed from a roadway into a hotel parking lot in a high crime area, known to police for drug activity. Secaucus police stopped the vehicle, citing its tinted windows in violation of N.J.S.A. 39:3-74, and defendant's "improper backing," in violation of N.J.S.A. 39:4-127. Police approached and questioned defendant and the female

---

[1] After defendant filed a motion to suppress all evidence seized, the State moved to admit defendant's statements to law enforcement pursuant to N.J.R.E. 104.

passenger, as both attempted to quickly exit the car and enter the hotel. Police noted defendant acted suspiciously in his mannerisms and responses to questions causing them to prolong the stop to investigate further. Secaucus Police Officer David Delseni testified he did not believe police suspicions at the scene of the stop rose to the level of probable cause to search or seek a search warrant for the vehicle at the time he placed defendant under arrest.

Defendant did not consent to search the car and police called a canine unit. Before the unit arrived, police arrested defendant after an electronic lookup revealed defendant's driver's license was suspended and there was an outstanding arrest warrant for defendant for failing to pay municipal court fines.

Defendant was taken from the scene and transported to police headquarters to begin processing. Thereafter, roughly an hour after the initial stop, one of the officers used his hand to block the sunlight and pressed his face into the darkened window to peer into the vehicle. He observed a handgun "stuffed" between the driver's seat and center console. Police removed the firearm, determining it lacked a serial number and appeared to be a privately made "ghost gun."

4

Officer Delseni testified that defendant "was in a cell" at the police station when he requested to "speak to a supervisor." He explained that defendant spoke with Sergeant Peter Garass and "asked to make a statement" and was subsequently interviewed by Detective Joseph Fuardo and Detective Michael Borelli. According to both Officer Delseni and Detective Borelli, defendant advised police that two additional handguns were concealed in his motorcycle, which was parked in the hotel lot next to the vehicle that police stopped that day. Officer Delseni testified that Detective Fuardo contacted the Hudson County Prosecutor's Office, and a court granted the search warrant for the motorcycle and hotel room based upon an affidavit prepared by Detective Fuardo, who did not testify at the hearing.

The affidavit was admitted into evidence without objection. In pertinent part, it stated that "[w]hile secured within the holding cell, [defendant] advised Sergeant . . . Garass that he wished to provide a statement regarding the recovered contraband." According to the affidavit, Detective Borelli and Detective Fuardo "removed [defendant] from the cell and escorted him to . . . [an] audio and video recorded interview room," where he was advised of his current charges, read his Miranda[2] rights, and waived his rights, agreeing to

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

5

provide a statement.  Defendant confessed "there was an additional handgun magazine" in his hotel room and the interview was terminated.

The affidavit further represented that, after terminating the interview, defendant

> asked what he could do to help his situation. [Detective Fuardo] then explained how cooperation agreements may apply to his current situation. [Defendant] then stated there were <u>two more guns</u> he ha[d] access to within this jurisdiction.  Specifically, one handgun was located in a vehicle that he ha[d] keys to open.  [Defendant] then asked if he would be charged if he provided the firearms to us.  Officers explained that possessing or having access to any firearms is unlawful, he would be charged as he has direct access and control over the firearms.
>
> At this time, the interview room audio and video recording was reactivated, and [defendant] was reminded of the conversation that had taken place and agreed that he was continually speaking freely and voluntarily.  [Defendant] explained there was a 9mm handgun and .45 caliber handgun concealed within a Suzuki GSXR, which is located in the parking space next to where the Honda Civic is currently parked. [Defendant] further explained the Suzuki motorcycle keys recovered from the back seat of the Honda Civic, unlocked the motorcycle, and would provide access to the firearms in the under seat storage compartment.
>
> [(Emphasis added).]

6

Upon securing and executing the search warrant, officers seized two handguns inside the locked rear seat of defendant's motorcycle, one was later learned to have been reported stolen from defendant's uncle.

At the conclusion of testimony, the parties submitted additional briefs and returned for oral arguments. The parties focused their arguments principally on the legality of the initial motor vehicle stop and search.[3] The State argued (1) the stop was valid, as there was "reasonable suspicion" that narcotics were in the car based on a totality of the circumstances; (2) officers lawfully ordered a canine unit and the extended traffic stop to await its arrival was reasonable; and (3) the gun was found in plain view. The prosecutor then stated,

> If the [c]ourt has any questions with regard to [the
> fruit of the poisonous tree,] . . . I do believe
> that . . . defendant giving a statement to the

[3] This focus was identified at the outset of the hearing, as the prosecutor stated "the main purpose[] of [the hearing was to] . . . focus[] on the initial stop of . . . defendant in the motor vehicle." He added, "If we want to litigate the validity of [defendant's] statement to the Secaucus police officers, that would be done in a separate hearing," noting that he would "call separate police officers, the ones who took his actual statement and read him his Miranda rights," but had not planned to call those witnesses on the first day of the hearing, as "the initial stop . . . predate[d]" the statements made by defendant. Defense counsel "agree[d] with everything the [p]rosecutor" stated, adding that "depending on what [the court] rules on the warrantless aspect of the search would . . . control the . . . warrant search and also the Miranda issue."

Secaucus . . . police department . . . did constitute an intervening circumstance or intervening act which attenuated . . . any illegality that occurred. The second two handguns were obtained after the use of a search warrant. If . . . defendant wants to attack the validity of that search warrant, then that's a separate hearing . . . that shouldn't be litigated today. It's called a Frank[]s[4] hearing.

Defense counsel argued the initial motor vehicle stop was improper, the extension of the stop was unreasonable, and the gun inside the motor vehicle was not in plain view, as Detective Borelli had to cup his hands and place them against the car to see inside through the tinted windows. He further argued any evidence derived from the illegal stop and search must be suppressed as the "fruit of the poisonous tree." Counsel cited to the warrant affidavit and argued defendant had been held in the holding cell "for several hours," before, according to the affidavit, "[defendant] advised Sergeant . . . Garass that he wished to provide a statement regarding the recovered contraband . . . . [and] also advised Sergeant Garass that there was an additional handgun magazine within the hotel room." He argued defendant only "wanted to talk in the first place" because he knew police had recovered the gun from the vehicle and "he wanted to know [if he] . . . could . . . have some cooperation to improve his

---

4 Franks v. Delaware, 438 U.S. 154 (1978).

A-0310-23

issue, to improve his situation." Accordingly, there was "no[] attenuation" and "without the seizure of the gun[,] the second part of the case doesn't happen."

On June 8, 2023, the court issued a written decision, granting the motion in part, finding the gun found at the initial stop was lawful but the gun was not "plainly visible" in plain view, and no other exception to the warrant requirement justified the illegal seizure of the gun as a result. The court thus suppressed the gun, granting defendant's motion to suppress in part as it pertained to the contents of the car.

However, the court denied defendant's motion to suppress defendant's statements used to obtain the search warrant and the evidence, including the additional guns seized in the subsequent search. After reviewing applicable law concerning the exclusionary rule and the attenuation doctrine, the court determined that "the 'link between the evidence,' i.e. the two handguns, and the 'illegality,' i.e. ordering a canine unit without reasonable suspicion, was sufficiently attenuated." The court, citing State v. Bell, 388 N.J. Super. 629, 638 (App. Div. 2006), found defendant's statement was an "intervening circumstance which attenuated or 'freed' the evidence of 'taint' and, therefore, should not subject the two handguns to exclusion under the fruit of the poisonous tree doctrine."

9

Finding no evidence that defendant's confession about the guns in his motorcycle were the product of the officer's requesting the canine unit to conduct a sniff or the illegally seized handgun, nor that police utilized such information to extract a confession from defendant, the court concluded that defendant waived his <u>Miranda</u> rights and "made a choice to give a statement." Therefore, the court denied defendant's motion to suppress the evidence seized as a result of the search of defendant's motorcycle pursuant to a warrant.

II.

On appeal defendant argues:

> <u>POINT I</u>
>
> THE TRIAL COURT FAILED TO GRANT THE PORTION OF THE MOTION TO SUPPRESS RELATED TO EVIDENCE DISCOVERED AS A RESULT OF THE SEARCH WARRANT DESPITE THE VALIDITY OF THE SEARCH WARRANT RESTING ON EVIDENCE DERIVED FROM A VIOLATION OF THE FOURTH AMENDMENT.

Defendant reprises his arguments before the trial court and contends the court erred in denying suppression of all evidence following the illegal search as defendant's statements underpinning the subsequent search warrant directly flowed from his knowledge that police already found the handgun in the car he had been driving. He argues "the search warrant was invalid because it was

10

the product of illegal police action," and was "based largely off of [defendant]'s statement to police."[5] He seeks reversal of the court's decision, asserting his "statement to police was the direct result of the illegal discovery of the gun in the [car], and evidence derived therefrom should have been suppressed."

III.

We must defer to the trial court's factual findings when reviewing decisions on motions to suppress evidence "so long as those findings are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015). We afford such deference because of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Ahmad, 246 N.J. 592, 609 (2021) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). By contrast, "conclusions of law are reviewed de novo." Zaman v. Felton, 219 N.J. 199, 216 (2014).

---

[5] To the extent defendant now raises challenges to the validity of the search warrant that were not raised below, we decline to address them as they were not properly presented to the trial court, see State v. Robinson, 200 N.J. 1, 20 (2009) (citing Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)), and turn on an entirely different legal standard for which defendant bears the burden of proof, see State v. Jones, 179 N.J. 377, 388 (2004).

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution both guarantee "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. It is axiomatic that "[e]vidence obtained as the fruit of an unlawful search or seizure must be suppressed." State v. Smith, 155 N.J. 83, 100 (1998).

Nevertheless, "simply because evidence was discovered as a result of the illegal actions of the police does not necessarily require its exclusion as fruit of the poisonous tree." State v. James, 346 N.J. Super. 441, 453 (App. Div. 2002) (citing Wong Sun v. United States, 371 U.S. 471, 487-88 (1963)). "The attenuation doctrine is an example of an exception to the exclusionary rule" and "examines whether the connection between the constitutional violation and the evidence is 'so attenuated as to dissipate the taint from the unlawful conduct.'" State v. Herrerra, 211 N.J. 308, 331 (2012) (first citing State v. Ball, 381 N.J. Super. 545, 550 n.1 (App. Div. 2005); and then quoting State v. Badessa, 185 N.J. 303, 311 (2005)). The chain of residual illegality is attenuated and derivative evidence is admissible, "if the causal connection between the illegal conduct and obtaining the evidence" is sufficiently diminished. James, 346 N.J. Super. at 453. Courts must assess whether the

A-0310-23

challenged evidence was acquired by exploitation of the primary "illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun, 371 U.S. at 488 (citation omitted).

In evaluating attenuation, this court weighs three factors: "(1) the temporal proximity between the illegal conduct and the challenged evidence; (2) the presence of intervening circumstances; and (3) the flagrancy and purpose of the police misconduct." State v. Johnson, 118 N.J. 639, 653 (1990). Temporal proximity "is the least determinative" factor. State v. Worlock, 117 N.J. 596, 623 (1990). By contrast, "[t]he second factor, intervening events, 'can be the most important factor in determining whether [evidence] is tainted.'" Johnson, 118 N.J. at 656 (second alteration in original) (quoting Worlock, 117 N.J. at 623). Finally,

> the flagrancy and purpose of the arrest "is particularly relevant" to determining whether evidence is the fruit of the arrest. State v. Shaw, 237 N.J. 588, 615 (2019). For instance, we may favor exclusion in spite of intervening circumstances where police conduct was "calculated to cause surprise, fright, and confusion." Brown v. Illinois, 422 U.S. 590, 605 (1975). However, where the police acted in good faith or their "conduct was more casual than calculating," this factor weighs in favor of admission. Worlock, 117 N.J. at 624.
>
> [State v. Alessi, 240 N.J. 501, 525 (2020) (citations reformatted).]

In applying those criteria here, we recognize the record is somewhat limited as defendant pled guilty before the court conducted its Rule 104 hearing to address the constitutionality of defendant's statements under the Fifth Amendment. Thus, based on the record before the court seeking to suppress the statements and the evidence derived from the resulting search warrant under the Fourth Amendment, we conclude the court did not misapply its discretion in finding the statements were attenuated from the improper motor vehicle search.

The court made findings, firmly grounded in the record, that the initial motor vehicle stop was constitutional, and that defendant was lawfully arrested at the scene pursuant to a valid outstanding warrant before the handgun was located. The court further noted that defendant had denied consent and was aware that the police were continuing their investigation at the scene. Importantly, the court also cited to the uncontroverted record reflecting that defendant "made a choice to give a statement and waived his Miranda rights before doing so." The court found "no evidence that the illegally seized handgun" was used to "extract" defendant's statements. The court cited to Bell, 388 N.J. Super. at 638, for the general proposition that "the station-house confession" elicited after police unlawfully entered a home to execute an

otherwise valid arrest warrant "was not the product of any illegality" and the "fruit of the poisonous tree and attenuation analysis were not required."

Upon those findings, the court concluded defendant's statement to police while in a holding cell "constituted a sufficient intervening circumstance which attenuated or 'freed' the evidence of 'taint' and, therefore" exempted "the two handguns to exclusion under the fruit of the poisonous tree doctrine." Although we recognize the court did not isolate each attenuation factor to reach its conclusion, we conclude the court made the necessary findings under applicable law and did not err in its determination.

The temporal proximity aside, intervening events, as identified by the motion court, sufficiently separated the illegal search from the events that followed. After a lawful traffic stop, both independently and combined, defendant's independently lawful arrest and properly Mirandized statements to police, appearing from the record to have been self-initiated, were sufficient to "break the chain" of illegality. We do not suggest that defendant's confession after waiver of his constitutional rights per se dissipated the taint of the illegal search. See Brown, 422 U.S. at 602 ("In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment

15

standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' 371 U.S. at 486."). Instead, we conclude that in the totality of these circumstances, the court properly found no evidence defendant's statements which led to the search warrant were "extracted" or propelled by exploitation of the illegality. See id. at 603 (recognizing "[i]t is entirely possible," that individuals "may decide to confess, as an act of free will unaffected by the initial illegality").

Defendant seeks to defeat attenuation by broadly applying a "but for" test—but for defendant's knowledge that police found the gun, he would never have provided incriminating information to seek their favor. Stretched to distortion, this would make all statements that follow temporally from an unconstitutional arrest or search "tainted" by what came before. This analysis is far too elastic an interpretation of the exclusionary rule and ignores the record. Here, the evidence established defendant was arrested after a lawful traffic stop upon an unrelated, lawful arrest warrant. Defendant was taken from the scene before the gun was located. The record is devoid of any evidence that, hours later, defendant was threatened or coerced to then speak to police or confess to possession of the seized gun or additional illegality. That defendant, with knowledge the police discovered or would likely discover the

16

gun tucked into the driver's seat, requested to cooperate and provide evidence in the hope of leniency, and thereafter willingly provided a statement, does not, on this record, make his statements the product of the initial illegality or render the evidence obtained from the lawfully obtained search warrant inadmissible.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M. C. Harley

Clerk of the Appellate Division

17

A-0310-23