940 A.2d 1185

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. ANDRE JOHNSON, A/K/A ANDRE CARTER, MAZI YAZIO AND D. MADEO, DEFENDANT–RESPONDENT.

Argued September 25, 2007—Decided February 26, 2008.

*Mary E. McAnally,* Deputy Attorney General, argued the cause for appellant (*Anne Milgram,* Attorney General of New Jersey, attorney).

*Stephen W. Kirsch,* Assistant Deputy Public Defender, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney).

Justice ALBIN delivered the opinion of the Court.

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution accord the highest degree of protection to privacy interests within the home. In this appeal, we must determine the validity of a warrantless

search by police of a duffel bag within a home. The primary issue is whether, under the New Jersey Constitution, defendant had standing to object to the search of the bag after he disclaimed owning it in response to police questioning. A gun recovered from the bag was the key evidence presented against defendant in a prosecution for unlawful possession of a weapon.

The State argues that the search was constitutional because defendant abandoned the bag and thus surrendered any reasonable expectation of privacy he possessed in the property. Alternatively, the State contends that the police had probable cause to believe that the gun was in the home and exigent circumstances did not permit time to obtain a warrant. On the other hand, defendant submits that he has automatic standing to object to the search under *State v. Alston*, 88 *N.J.* 211, 440 *A.*2d 1311 (1981). In particular, he states that the duffel bag was not abandoned property in a home where it had potential owners and that he did not lose standing merely because he did not incriminate himself by admitting to owning the bag. He also maintains that an ample number of police officers had secured the premises and that no exigency excused the failure to secure a telephone warrant before conducting the search.

The trial court held that the search was constitutional. The Appellate Division reversed and suppressed the evidence. We conclude that, despite his response to the police questioning, defendant did not lose his standing to challenge the search of a duffel bag that had other apparent owners. In addition, because of the absence of exigent circumstances, the police should have obtained a telephonic warrant from a judicial officer before searching the bag. We therefore affirm the Appellate Division's suppression of the evidence.

## I.

### A.

A Middlesex County grand jury charged defendant Andre Johnson in one indictment with third-degree unlawful possession of a

weapon, *N.J.S.A.* 2C:39–5(b), and fourth-degree hindering apprehension, *N.J.S.A.* 2C:29–3(a)(3), and in a second indictment with second-degree possession of a weapon by a person previously convicted of a crime, *N.J.S.A.* 2C:39–7(b). In bifurcated trials, the second indictment being tried after the first, a jury found defendant guilty of all three crimes.[1] The trial court sentenced defendant to a seven-year term in state prison with a five-year period of parole ineligibility for possession of a weapon by a previously convicted person, to a concurrent term of four years with a two-year parole disqualifier for unlawful possession of a weapon, and to a concurrent term of eighteen months for hindering apprehension.

On appeal, the Appellate Division concluded that defense counsel's failure to file a suppression motion to contest the search constituted ineffective assistance of counsel under the standards set forth in *Strickland v. Washington,* 466 *U.S.* 668, 687, 104 *S.Ct.* 2052, 2064, 80 *L.Ed.*2d 674, 693 (1984), and *State v. Fritz,* 105 *N.J.* 42, 58, 519 *A.*2d 336 (1987). *State v. Johnson,* 365 *N.J.Super.* 27, 37, 837 *A.*2d 1131 (App.Div.2003), *certif. denied,* 179 *N.J.* 372, 845 *A.*2d 1254 (2004). The panel ordered the trial court to conduct a suppression hearing to determine whether the handgun admitted into evidence at defendant's trial was obtained as a result of a lawful search. *Ibid.* On remand, the trial court conducted a four-day hearing to decide the constitutionality of the contested search.

### B.

At the hearing, the State presented the testimony of North Brunswick Public Safety Director Kenneth McCormick, who at the

---

[1] Although not raised by either party, defendant has attached to his brief a verdict sheet on which boxes marked "not guilty" are checked off on both the third-degree unlawful possession of a weapon charge and the hindering apprehension charge. Inexplicably, defendant cites to this sheet as proof that he was convicted on both counts. We note that the trial transcript shows that the jury returned a verdict of guilty on all counts.

time of the search was a North Brunswick police sergeant, and North Brunswick Patrolman Scott Henry.

In response to a report of domestic violence, Officer Henry was dispatched to the apartment of Amanda Glover in North Brunswick, arriving at approximately 9:24 a.m. on December 8, 2001. Earlier that morning, Ms. Glover filed a domestic violence complaint against Johnny Holloway Jr. (Holloway), her boyfriend, who had threatened her with a gun and knife after she returned home from a holiday party. As a result of that incident, warrants were issued for the arrest of Holloway for assault and terroristic threats. At the time, Holloway also had an outstanding arrest warrant for a traffic offense.

On arriving at Glover's apartment, Officer Henry spoke with her nine-year-old son, who was home alone. The young boy told the officer that, earlier, Holloway had banged on the front door of the apartment while holding a .45 caliber handgun. When Ms. Glover returned to the apartment soon afterwards, she was speaking on her cell phone with Holloway. Although Holloway would not tell her where he was, she could hear Holloway's father in the background. She told Officer Henry that she believed that Holloway had called her from his father's apartment in North Brunswick.

After reporting that information to his supervisor, Sergeant McCormick, Officer Henry proceeded to John Holloway Sr.'s apartment, where he met Sergeant McCormick and three other North Brunswick patrolmen. Once they were assembled, Officer Henry knocked on the ground-floor door to the apartment, which was located on the second floor. Holloway Sr. answered, and the officers explained that they had a warrant to arrest his son. Holloway Sr. told the officers that his son was in the bathroom. At the officers' request, he gave permission for them to enter his residence to make the arrest and agreed to remain outside the apartment for his safety.

With their weapons drawn, the officers walked up the apartment stairs and entered an open living room with a dining area

and kitchen off to the left, and a bathroom straight ahead. Sergeant McCormick remained in the living room, keeping an eye on Mrs. Holloway, a child, and defendant Johnson, who was behind the dining room table, talking on the telephone. Officer Henry and the patrol officers went directly to the bathroom, where they arrested Holloway and looked without success for the gun. Officer Henry brought Holloway to the living room, where he was frisked and handcuffed. Holloway was then led downstairs and placed in the back of a patrol car.

In the meantime, in the living room, police officers placed Mrs. Holloway and the child on a couch while Sergeant McCormick, with his gun still drawn, repeatedly asked defendant to get off the telephone. After defendant failed to comply, the sergeant pulled the phone out of defendant's hand and quickly patted him down. Defendant was dressed only in boxer shorts and a t-shirt.

Defendant was not a stranger to Sergeant McCormick. In addition to knowing of defendant's criminal history, Sergeant McCormick had been involved in an arrest of defendant that led to a conviction—a conviction later overturned by this Court. *State v. Johnson*, 168 *N.J.* 608, 775 *A.2d* 1273 (2001). At the time of the present encounter, defendant had a pending civil rights suit against Sergeant McCormick and other North Brunswick officials.

When Sergeant McCormick asked defendant why he was in the apartment, defendant replied that he was visiting. Defendant then questioned whether McCormick had a warrant to search the residence. Sergeant McCormick explained that they had arrest warrants for Holloway in a matter involving a gun and that defendant would have to leave the apartment for about thirty minutes while the police "conducted [their] business." Defendant somewhat grudgingly agreed to leave after he "gather[ed] his things."

The area where defendant stood was surrounded by some boxes as well as black plastic garbage bags that appeared to contain clothing. Defendant put on a pair of pants and boots that he retrieved from a nearby walk-in closet. He then picked up a small

cardboard box, about the size of a cigar box, and placed it inside an empty red, white and blue duffel bag. He also picked up a larger box containing a DVD or VCR player and placed it under one of his arms. With the duffel bag in one hand and the larger box in the other, he began to walk from around the dining room table. At that point, Sergeant McCormick stopped defendant and asked, "[A]re those items yours?" Defendant "looked at [McCormick] with a blank stare," and "mumbled, 'yes.'" Defendant then eyed "the gym bag in his hand as if he was surprised it was" there. He looked back at Sergeant McCormick and said, "[T]hese aren't mine. These aren't mine. That's not my bag."

Sergeant McCormick next inquired why defendant had put the cardboard box in the duffel bag and had tried "to leave with it" if it was not his. Defendant responded, "I don't know whose stuff this is." Sergeant McCormick then asked Holloway Sr., who had returned to the apartment, "Do you know whose stuff this is?" Holloway Sr. stated that he did not.

After that response, Sergeant McCormick grabbed the duffel bag from defendant's hand, opened it, and pulled out the cardboard box. When he looked in the box, Sergeant McCormick found a loaded .45 caliber Ruger handgun.[2] Defendant was then placed under arrest.

In his testimony, Sergeant McCormick maintained that he seized and then searched the duffel bag because his "suspicions were heightened" by defendant's equivocal responses and his criminal past, and because he wanted to be certain that defendant was not leaving with the weapon. He stated that the officers did not have time to secure a search warrant in advance because they responded to Holloway Sr.'s residence immediately after learning that Holloway, who earlier had brandished a handgun, was likely on the premises. According to the sergeant, had he not discovered the gun after seizing the duffel bag, he would have asked

---

[2] Personal items belonging to Ms. Glover were later discovered in the box as well.

Holloway Sr. for permission to search the premises for the gun. Alternatively, if Holloway Sr. did not give consent, Sergeant McCormick indicated that he would have applied for a search warrant and secured the scene in the interim.

Defendant also testified at the hearing. He stated that, in fact, he was living in the apartment with his mother and Holloway Sr., his stepfather. He told Sergeant McCormick that he was only a visitor out of fear that he would be harassed because of his history with the North Brunswick police. He explained that as he was preparing to leave the apartment, the duffel bag was immediately in front of the DVD player. He intended to take the DVD player with him and only picked up the duffel bag to move it out of the way. When Sergeant McCormick questioned him about the bag, he placed it on the table, and at that point the sergeant took control of it.

## C.

The trial court credited the testimony of Sergeant McCormick and Officer Henry and found that the actions of the police "were reasonable under the circumstances." The court held that the search was constitutional on two separate grounds: defendant's abandonment of the duffel bag and the presence of probable cause and exigent circumstances for conducting a warrantless search. In particular, in addressing exigent circumstances, the court focused on the missing gun in the apartment where others might have had access to it, as well as defendant's uncooperative attitude and prior criminal history. The court therefore denied the motion to suppress the gun and upheld defendant's convictions.

## D.

In an unpublished opinion, the Appellate Division reversed and suppressed the gun. First, the appellate panel determined that the warrantless search of the duffel bag was not incident to Holloway's arrest. Relying on *Chimel v. California*, 395 *U.S.* 752, 89 *S.Ct.* 2034, 23 *L.Ed.*2d 685 (1969), the panel noted that the

search-incident-to-a-lawful-arrest exception to the warrant requirement is limited to "a search of the arrestee's person and the area 'within his immediate control.'" *Id.* at 763, 89 *S.Ct.* at 2040, 23 *L.Ed.*2d at 694. Holloway, who had been arrested in the bathroom, had already been taken out of the house at the time of the search of the bag in the living room. Next, the panel rejected the notion that defendant's disclaiming ownership of the duffel bag could have justified the warrantless search in Holloway Sr.'s apartment or that defendant lacked standing to challenge the search of property that he was criminally charged with possessing. Last, the panel declined to find exigent circumstances for the search after Sergeant McCormick seized the bag, explaining that "the weapon was inside a closed box inside a zipped bag" and that "[t]here was no immediate danger to the police or occupants of the house."

Under the circumstances, the panel concluded, the police "had two choices after arresting Holloway, Jr., and removing him from the house: '(1) maintain the status quo and phone in for a search warrant or (2) leave.'" Because in its view the warrantless search of the duffel bag was not a constitutionally-permissible option, the panel granted the suppression motion.

We granted the State's petition for certification. 189 *N.J.* 105, 912 *A.*2d 1264 (2006).

## II.

Although the State apparently concedes that defendant had "standing" to bring a suppression motion "because he [was] charged with possessory offenses," the State argues that defendant nonetheless had the burden of proving that "his reasonable expectation of privacy was infringed by the search of either the duffel bag or [its] contents." According to the State, under the New Jersey Constitution, "standing" gives a defendant a procedural basis to file a suppression motion, but does not relieve him of the obligation of showing a substantive violation of his privacy rights. The State contends that in this case defendant had no

reasonable expectation of privacy in the duffel bag once he disclaimed owning it. Second, the State asserts that based on both probable cause and exigent circumstances, the police were justified in conducting the warrantless search of the duffel bag. The State maintains that (1) there was probable cause to believe that the gun brandished by Holloway just hours earlier was somewhere in his father's apartment when the police arrested him on the premises, and (2) there were exigent circumstances due to the "rapidly unfolding and unexpected events," which included defendant's uncooperative behavior and attempt to leave with the bag that he later abandoned when questioned by the police.

Defendant counters that the search of the duffel bag did not fall within any exception to the Federal or State Constitution's warrant requirement. He submits that after Holloway was arrested and secured in a patrol car, the search of the apartment or the duffel bag could not be justified as a search incident to an arrest. Defendant also claims that the police had no right to remain in Holloway Sr.'s apartment to "conduct business" after Holloway was handcuffed and taken from the premises. Defendant posits that the duffel bag could not be considered abandoned in a home, where any of a number of people could have asserted ownership. Moreover, he argues that the State's approach—creating a "post-standing inquiry" that probes whether a defendant "had a personal 'legitimate expectation of privacy' "—would eviscerate the automatic standing rule of *Alston*. That approach, according to defendant, would have the effect of supplanting New Jersey's standing rule with the current federal standard, which focuses on whether the defendant possessed a "legitimate expectation of privacy." In short, defendant calls for this Court to uphold the Appellate Division's suppression of the evidence.

We now address whether defendant's disclaimer of ownership of the duffel bag, under the compulsion of police questioning, stripped him of standing to challenge the constitutionality of the search of that bag in Holloway Sr.'s home. We begin with an

overview of this Court's jurisprudence on a defendant's standing to challenge the constitutionality of a search or seizure.

## III.

### A.

Both the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const.* amend. IV; *N.J. Const.* art. I, ¶ 7. On a number of occasions, in weighing New Jersey's unique interests and values, we have construed Article I, Paragraph 7 to afford our citizens greater protection against unreasonable searches and seizures than accorded under the Federal Constitution. *State v. Eckel,* 185 *N.J.* 523, 537–38, 888 *A.*2d 1266 (2006); *see, e.g., State v. Carty,* 170 *N.J.* 632, 639, 648–51, 790 *A.*2d 903 (2002); *State v. Johnson,* 68 *N.J.* 349, 353–54, 346 *A.*2d 66 (1975). Our standing jurisprudence in search-and-seizure cases represents one of those occasions when we have taken a different path from that of our federal counterpart.

In *Alston, supra,* we reaffirmed New Jersey's long-established rule of standing in cases involving challenges to the lawfulness of searches and seizures under the Fourth Amendment of the Federal Constitution and Article I, Paragraph 7 of the New Jersey Constitution. 88 *N.J.* at 228, 440 *A.*2d 1311. We held in that case that, under our State Constitution, a criminal defendant has standing to move to suppress evidence from a claimed unreasonable search or seizure "if he has a proprietary, possessory or participatory interest in either the place searched or the property seized." *Ibid.* We also held that a defendant has standing if he "is charged with an offense in which possession of the seized evidence at the time of the contested search is an essential element of guilt." *Ibid.*

In retaining the rule of automatic standing in the circumstances just described, we declined to follow the course taken by the United States Supreme Court in the then-recently decided cases of *Rakas v. Illinois*, 439 *U.S.* 128, 99 *S.Ct.* 421, 58 *L.Ed.*2d 387 (1978), *United States v. Salvucci*, 448 *U.S.* 83, 100 *S.Ct.* 2547, 65 *L.Ed.*2d 619 (1980), and *Rawlings v. Kentucky*, 448 *U.S.* 98, 100 *S.Ct.* 2556, 65 *L.Ed.*2d 633 (1980). In those cases, the Court jettisoned its own automatic standing rule under the Fourth Amendment in favor of a new rule that focused solely on whether a defendant suffered a personal violation of his own right to be free from an unreasonable search or seizure. *See Rakas*, 439 *U.S.* at 148–49, 99 *S.Ct.* at 433, 58 *L.Ed.*2d at 404–05; *Salvucci, supra*, 448 *U.S.* at 95, 100 *S.Ct.* at 2554–55, 65 *L.Ed.*2d at 630; *Rawlings*, 448 *U.S.* at 104, 100 *S.Ct.* at 2561, 65 *L.Ed.*2d at 641. Under that new rule, a person alleging a Fourth Amendment violation needs to establish that law enforcement officials violated "an expectation of privacy" that he possessed in the place searched or item seized. *Salvucci, supra*, 448 *U.S.* at 93, 100 *S.Ct.* at 2553, 65 *L.Ed.*2d at 629. That approach overruled *Jones v. United States*, 362 *U.S.* 257, 263, 80 *S.Ct.* 725, 732, 4 *L.Ed.*2d 697, 703 (1960), which held that a defendant charged with a possessory offense had automatic standing to contest an allegedly unlawful search or seizure.

In *Alston, supra*, we found the "[U.S.] Supreme Court's grounds for abandoning the *Jones* rule of standing unpersuasive." 88 *N.J.* at 228, 440 *A.*2d 1311. We noted that "[a]dherence to the vague 'legitimate expectation of privacy' standard, subject as it is to the potential for inconsistent and capricious application, will in many instances produce results contrary to commonly held and accepted expectations of privacy." *Id.* at 226, 440 *A.*2d 1311. In particular, we eschewed the "amorphous 'legitimate expectations of privacy in the area searched' standard as applied in *Rakas, Salvucci*, and *Rawlings*," *id.* at 228, 440 *A.*2d 1311, because that standard gave insufficient protection to a person's property seized by law enforcement officials, thus running "contrary to a fundamental principle rooted in Article I, paragraph 7 of the New Jersey Constitution," *id.* at 226, 440 *A.*2d 1311. We therefore "respectfully

part[ed] company" with the United States Supreme Court in construing Article I, Paragraph 7 differently from the Fourth Amendment. *Ibid.*

■ Our possessory, proprietary and participatory standing analysis not only incorporates the notion of a reasonable expectation of privacy, but also advances other important state interests. The underlying rationale for our automatic standing rule, derived from *Jones,* is three-fold. First, a person should not be compelled to incriminate himself by having to admit ownership of an item that he is criminally charged with possessing in order to challenge the lawfulness of a search or seizure. *See Alston, supra,* 88 *N.J.* at 222 n. 6, 440 *A.*2d 1311. In other words, a person should not have to sacrifice one constitutional right to assert another. Second, the State should not be placed in the position of taking seemingly conflicting positions, on the one hand prosecuting a defendant for possessing an item in violation of the law while on the other arguing that the defendant did not, for standing purposes, possess a privacy interest in the property seized. *See id.* at 223, 440 *A.*2d 1311. Last, by allowing a defendant broader standing to challenge evidence derived from unreasonable searches and seizures under our State Constitution, we increase the privacy rights of all New Jersey's citizens and encourage law enforcement officials to honor fundamental constitutional principles. *See id.* at 226 n. 8, 440 *A.*2d 1311.

The high-water mark of our standing jurisprudence is found in *State v. Mollica,* 114 *N.J.* 329, 554 *A.*2d 1315 (1989), a case in which we expansively defined a defendant's "participatory" interest in property not his own as a basis for a challenge under Article I, Paragraph 7. *Id.* at 339–40, 554 *A.*2d 1315. In *Mollica,* armed with a search warrant, the police searched the defendant's hotel room and seized evidence of illegal gambling that led to the filing of criminal charges. *Id.* at 334, 554 *A.*2d 1315. The affidavit in support of that search warrant was based on a co-defendant's telephone records that were unconstitutionally seized during the gambling investigation. *Ibid.* The records were generated by the

defendants' alleged criminal gambling activities. *Id.* at 340, 554 *A.2d* 1315. We held that the defendant had standing to object to the seizure of his co-defendant's telephone records because there was "a sufficient relationship between the defendant and the gambling enterprise, to establish a participatory interest on the part of [the] defendant in this evidence." *Ibid.*

In *State v. Bruns,* 172 *N.J.* 40, 796 *A.2d* 226 (2002), the Court again acknowledged the "broad standing rule that entitles a criminal defendant to challenge an unreasonable search and seizure under Article I, paragraph 7 of the New Jersey Constitution if he or she can demonstrate a proprietary, possessory, or participatory interest in the place searched or items seized." *Id.* at 56, 796 *A.2d* 226. However, given the unique facts of *Bruns,* the Court determined that the defendant did not have a sufficient participatory interest to object to an automobile search that revealed two items of evidence that tied him to an armed robbery that he was later convicted of committing. *Id.* at 56–57, 796 *A.2d* 226. In that case, a police officer stopped a car with two occupants, the driver, who owned the vehicle, and a front seat passenger. *Id.* at 43, 796 *A.2d* 226. The officer conducted a search of the car, discovering a toy gun and knife under the front passenger seat. *Id.* at 44, 796 *A.2d* 226.

The defendant was not a passenger in the car or in the vicinity at the time of the stop and search. *Id.* at 57, 796 *A.2d* 226. The record, moreover, contained no evidence demonstrating that the defendant retained any proprietary or possessory interest in the toy gun and knife. *Id.* at 56, 796 *A.2d* 226. For standing purposes, the Court only analyzed whether the defendant had the requisite "participatory interest" in the weapons used in the robbery committed seven days before the car stop. *Id.* at 57, 796 *A.2d* 226. The Court "recognize[ed] that in most cases" when evidence is seized "implicating a defendant in a crime[, the] defendant will be able to establish an interest in the property seized or placed searched." *Id.* at 59, 796 *A.2d* 226. It concluded, however, that in the unusual facts of *Bruns,* the "proprietary

connection" between the seized evidence and the crime was too tenuous to afford the defendant standing to challenge the search.[3] *Ibid.*

Following *Alston,* our courts have consistently applied the automatic standing rule to defendants charged with possessory offenses, regardless of whether they had an expectation of privacy in the area searched. *See, e.g., State v. Carlino,* 373 *N.J.Super.* 377, 384, 861 *A.*2d 849 (App.Div.2004) (holding that defendant had automatic standing to challenge search of another person's fanny pack containing drugs, which defendant was later charged with possessing), *certif. denied,* 182 *N.J.* 430, 866 *A.*2d 986 (2005); *State v. Miller,* 342 *N.J.Super.* 474, 478, 777 *A.*2d 348 (App.Div.2001) (noting that defendant had automatic standing to challenge search of home in which he was present even though he did not reside there); *State v. De La Paz,* 337 *N.J.Super.* 181, 193–95, 766 *A.*2d 820 (App.Div.) (holding that defendant had automatic standing to challenge warrantless entry of house where defendant had been guest and where drugs were found), *certif. denied,* 168 *N.J.* 295, 773 *A.*2d 1158 (2001); *State v. Binns,* 222 *N.J.Super.* 583, 589 n. 4, 537 *A.*2d 764 (App.Div.) (noting that defendants had standing to make motion to suppress evidence found in car they were driving, even though car had been rented by third-party who was not present), *certif. denied,* 111 *N.J.* 624, 546 *A.*2d 540 (1988); *State v. Kearney,* 183 *N.J.Super.* 13, 21, 443 *A.*2d 214 (App.Div.1981) (holding that as passenger in car, defendant had automatic standing to challenge search of trunk and seizure of bag containing

---

[3] We note that in declining to find a "participatory interest," the Court concentrated on "the passage of seven days between the crime and the seizure of the evidence [and] defendant's lack of any physical proximity to the evidence." *Bruns, supra,* 172 *N.J.* at 59, 796 *A.*2d 226. We emphasize, however, that in those cases in which the interest in the seized evidence is possessory or proprietary, or the evidence supports an element of the offense, the time separating the crime and the search or seizure, or the defendant's physical absence when the place is searched and item seized, will probably have no bearing on the issue of standing.

drugs from trunk because he was charged with possession of those drugs), *certif. denied,* 89 *N.J.* 449, 446 *A.*2d 169 (1982).

In light of the general principles governing our rule on standing, we next consider whether, in this case, defendant had standing to challenge the search of the duffel bag and the seizure of the gun within it.

### B.

The State contends that, regardless of whether defendant has standing under state law, he abandoned the duffel bag when he disclaimed owning the bag in response to Sergeant McCormick's questions and therefore had no reasonable expectation of privacy in the search of the bag. Although the State insists that its argument is not about standing, it nevertheless relies on the federal concept of abandonment, which is used to determine standing. Under federal law, one who abandons property has no legitimate expectation of privacy in that property and therefore no standing to object to a search or seizure of that property. *See, e.g., Texas v. Brown,* 460 *U.S.* 730, 748, 103 *S.Ct.* 1535, 1546, 75 *L.Ed.*2d 502, 517 (1983) (Stevens, J., concurring in the judgment) (noting that "if an item has been abandoned, [no] Fourth Amendment interest is implicated, and neither probable cause nor a warrant is necessary to justify seizure"). According to the State, without having a reasonable expectation of privacy in the thing searched or item seized, defendant cannot make out a Fourth Amendment or Article I, Paragraph 7 violation.

We find that the State's proposed approach merely places another layer of standing—the federal standard—on top of our automatic standing rule. In *Alston, supra,* we roundly rejected hinging a defendant's right to challenge a search based on "a reasonable expectation of privacy" analysis. 88 *N.J.* at 226–27, 440 *A.*2d 1311. We decline to adopt that analysis in deciding whether property is abandoned.

■ Although we do not use a reasonable expectation of privacy analysis for standing purposes in criminal cases, we do apply that analysis to determine whether a person has a substantive right of privacy in a place searched or an item seized. *See State v. McAllister*, 184 *N.J.* 17, 32–33, 36, 875 *A.2d* 866 (2005); *State v. Hempele*, 120 *N.J.* 182, 198–200, 576 *A.2d* 793 (1990). For example, in *McAllister, supra*, we held that under our State Constitution individuals have a substantive privacy right in their bank records, requiring a prosecutor to obtain a grand jury subpoena or warrant before obtaining those records. 184 *N.J.* at 32–33, 36, 875 *A.2d* 866. In that case, we implicitly recognized that individuals have a possessory, proprietary, and participatory interest in their bank records. It therefore follows that a person has standing to challenge an unlawful search or seizure of his bank records as much as he would a warrantless search of his home or attaché case. *McAllister's* and *Hempele's* finding of a substantive right of privacy in certain items did not rewrite this Court's standing jurisprudence in *Alston*.

In the typical case the notion of a possessory or proprietary interest will be clear, but, from time to time, a case will arise, as in *McAllister*, in which this Court will have to determine whether an individual possesses a substantive right of privacy in a class of objects or a general place. We are not dealing here, as in *McAllister*, with the question of whether a person has a substantive right of privacy in an entire class of property. Instead, we are applying traditional notions of standing to a duffel bag in a home.

This case provides our Court with its first opportunity to address whether a defendant retains standing to challenge the search or seizure of abandoned property. Courts generally recognize that the abandonment of property strips a person of standing to challenge a search. In deciding the issue of abandonment, most jurisdictions analyze whether a defendant has a reasonable expectation of privacy in the item discarded. *See, e.g., United States v. Mitchell*, 429 *F.*3d 952, 958 (10th Cir.2005) (explaining that "[a]

defendant lacks standing to complain of an illegal search or seizure of property which has been abandoned" and that "[t]he test for abandonment is whether the defendant has retained any reasonable expectation of privacy in the property" (quotations omitted)); *see also* 1 LaFave, *Search and Seizure* § 2.6(b), at 576 & n. 45 (3d ed.1996). *But see State v. Tucker,* 136 *N.J.* 158, 172, 642 *A.*2d 401 (1994) ("Property is not considered abandoned when a person throws away incriminating articles due to the unlawful actions of police officers." (quotations omitted)). That approach focuses solely on the person who disclaims an interest in the property and disregards that others might have had an ownership interest in the property subject to an unreasonable search and seizure.

Property can be abandoned for standing purposes. Traditionally, abandonment has been defined as "[t]he relinquishing of a right or interest with the intention of never again claiming it." *Black's Law Dictionary* 2 (8th ed.2004); *see also State v. Bailey,* 97 *N.J.Super.* 396, 400, 235 *A.*2d 214 (App.Div.1967) (relying on same definition). However, because we adhere to a policy of automatic standing when the seized property satisfies an element of the charged offense, i.e. possessory offense cases, any exception to that rule must be carefully drawn and consistent with the principles underlying our standing jurisprudence. As we have earlier discussed, our standing rule is intended to safeguard the privacy rights of our citizens and to deter the police from conducting unreasonable searches and seizures, particularly in a home, which is accorded heightened constitutional protections.

 We now hold that if the State can show that property was abandoned, a defendant will have no right to challenge the search or seizure of that property.[4] Stated differently, a defen-

---

[4] In a warrantless search, the State bears the burden of proving by a preponderance of the evidence the constitutionality of the search. *See State v. Pineiro,* 181 *N.J.* 13, 19–20, 853 *A.*2d 887 (2004). Here, the State must prove by a

dant will not have standing to object to the search or seizure of abandoned property. This represents a narrow exception to our automatic standing rule. For the purposes of standing, property is abandoned when a person, who has control or dominion over property, knowingly and voluntarily relinquishes any possessory or ownership interest in the property and when there are no other apparent or known owners of the property.[5] That approach provides the strongest guarantee that the police will not unconstitutionally search or seize property, which has multiple apparent owners, merely because one person has disclaimed a possessory or ownership interest in that property.

The issue therefore is whether, despite defendant's seeming disclaimer, he had standing to challenge the search either because he retained a proprietary, possessory, or participatory interest in the duffel bag and its contents or because the seized evidence was necessary to prove an essential element of the crime charged. We must determine whether defendant by his conduct surrendered the right to challenge the constitutionality of the search. We therefore look to the relevant facts.

In the early morning of December 8, 2001, Holloway threatened his girlfriend with a gun. Just hours afterwards, the police entered Holloway Sr.'s home with his permission and took his son into custody on an arrest warrant issued as a result of the earlier domestic violence incident. In conducting a search incident to the arrest, the police did not find the gun.

In the apartment at the time of Holloway's arrest were defendant, Mrs. Holloway, and a young child. Sergeant McCormick told defendant, who was clad only in boxer shorts and a t-shirt,

---

preponderance of the evidence that the defendant abandoned the property and therefore has no standing to object to the search.

[5] To the extent that *State v. Lee*, 245 *N.J.Super.* 441, 586 *A.2d* 256 (App.Div. 1991), suggests that the determination of whether property is abandoned is governed by a "reasonable expectation of privacy" standard in a challenge to a search or seizure, *id.* at 450–51, 586 *A.2d* 256, we disapprove of that holding.

that he would have to leave the premises for a short while. Defendant got dressed and then put a cardboard box about the size of a cigar box in a duffel bag. As defendant began to walk out of the apartment with the duffel bag, Sergeant McCormick naturally became concerned that the gun might be leaving with him. He asked defendant whether the duffel bag was his. Defendant equivocated; at first he said yes, and almost immediately afterwards he said no, looking at the bag as though he were surprised it was in his hands. Sergeant McCormick then asked Holloway Sr. whether he knew who owned the bag. He said he did not. Sergeant McCormick next grabbed the duffel bag from defendant's hand and opened both the bag and the box, discovering a .45 caliber gun.

Under those circumstances, for purposes of defendant's standing to challenge the search under Article I, Paragraph 7, we cannot conclude that the duffel bag was "abandoned" or that defendant had freely disclaimed a possessory or proprietary interest in the bag. First, the duffel bag was located in a home that was occupied by at least five people. Holloway, Mrs. Holloway, and the young child might have had a property interest in the bag. Indeed, Holloway was charged with criminally possessing the very same gun found in the bag. That defendant and Holloway Sr. denied knowing who owned the duffel bag did not forfeit the rights of the other occupants of the apartment or give the police a license to rummage through other peoples' effects. The other household members too had a right not to have their "effects" subjected to an unreasonable search. *See Alston, supra,* 88 *N.J.* at 226–27, 440 *A.*2d 1311 (citing *Rawlings, supra,* 448 *U.S.* at 116–19, 100 *S.Ct.* at 2567–68, 65 *L.Ed.*2d at 649–51 (Marshall, J., dissenting)).

Accordingly, the duffel bag in the Holloway home was not truly abandoned because the police might still have easily determined its owner. New Jersey's broad rule of standing protects the privacy rights of not just the accused, but also others in a home who might not have a ready forum in which to make their voices heard. *See id.* at 226 n. 8, 440 *A.*2d 1311.

■ In addition, we cannot conclude that defendant should be stripped of standing because he disclaimed ownership of the duffel bag in response to police questioning. One of the basic tenets of our standing rule is that a defendant should not have to sacrifice his right against self-incrimination to assert his constitutional right to be free from an unlawful search. *See Alston, supra,* 88 *N.J.* at 222 n. 6, 440 *A.*2d 1311 (noting that automatic standing rule "evolved" in part to "avoid the dilemma" of requiring defendant to gain "standing to assert a Fourth Amendment right only by relinquishing his Fifth Amendment privilege against self-incrimination"). Assuming that he knew the contents of the bag, if we follow the way suggested by the State, defendant would be presented with a Catch–22: either he could admit that the duffel bag was his and incriminate himself, in which case his oral admission and the gun, if lawfully obtained pursuant to a search warrant, would be used against him at trial, or he could deny ownership of the bag, in which case he would not have standing to challenge an unlawful search. Those are hardly the circumstances that would allow for a voluntary disclaimer of a possessory interest in the bag for standing purposes. We therefore cannot say that defendant forfeited his right to challenge the search solely because he did not incriminate himself. *See State v. Isom,* 196 *Mont.* 330, 641 *P.*2d 417, 422–23 (1982) ("[A] mere disclaimer of ownership in an effort to avoid making an incriminating statement in response to police questioning should not alone be deemed to constitute abandonment[.]"); 1 LaFave, *Search and Seizure* § 2.6(b), at 588–89 ("[I]t should not be assumed ... that a disclaimer of ownership always constitutes an abandonment for Fourth Amendment purposes.... 'Mere denial of ownership is not proof of an intent to abandon.' " (quoting *People v. Cameron,* 73 *Misc.*2d 790, 342 *N.Y.S.*2d 773, 782 (N.Y.Sup.Ct.1973))).

All of the relevant factors taken together lead us to conclude that the duffel bag was not abandoned property and that defendant had standing to challenge the search and seizure of the bag. *See Alston, supra,* 88 *N.J.* at 228, 440 *A.*2d 1311; *see also Bruns, supra,* 172 *N.J.* at 56, 796 *A.*2d 226; *Mollica, supra,* 114 *N.J.* at

338–40, 554 A.2d 1315. Because we hold that defendant has standing and because the search was conducted without a warrant, the State had the burden of proving by a preponderance of the evidence that the search of the duffel bag and seizure of the gun fell within an exception to the warrant requirement. See *Pineiro, supra,* 181 *N.J.* at 19–20, 853 A.2d 887.

## IV.

■■■■ Under the Fourth Amendment of the Federal Constitution and Article I, Paragraph 7 of our State Constitution, judicially-authorized search warrants are strongly preferred before law enforcement officers conduct a search, particularly of a home. *See, e.g., Welsh v. Wisconsin,* 466 *U.S.* 740, 748–49, 104 *S.Ct.* 2091, 2097, 80 *L.Ed.*2d 732, 742 (1984); *State v. Elders,* 192 *N.J.* 224, 246, 927 A.2d 1250 (2007). Because our constitutional jurisprudence generally favors warrants based on probable cause, all warrantless searches or seizures are "presumptively unreasonable." *Elders, supra,* 192 *N.J.* at 246, 927 A.2d 1250. Therefore, when the police act without a warrant, the State bears the burden of proving by a preponderance of the evidence not only that the search or seizure was premised on probable cause, but also that it "f[ell] within one of the few well-delineated exceptions to the warrant requirement." *Pineiro, supra,* 181 *N.J.* at 19–20, 853 A.2d 887 (quotations omitted). For example, our case law permits a warrantless search when incident to a lawful arrest, when consent is given, when government officials act in a community-caretaking function, and when exigent circumstances compel action. *State v. Moore,* 181 *N.J.* 40, 45, 853 A.2d 903 (2004) (citing *State v. Hill,* 115 *N.J.* 169, 173–74, 557 A.2d 322 (1989)).

■■■■ In this case, the State relies on the exigent-circumstances exception to the warrant requirement to justify the search of the duffel bag in the Holloway home. Although "exigent circumstances" cannot be precisely defined or reduced to a neat formula, *see State v. Nishina,* 175 *N.J.* 502, 516, 816 A.2d 153 (2003), some factors to be considered in determining whether law

enforcement officials faced such circumstances are the urgency of the situation, the time it will take to secure a warrant, the seriousness of the crime under investigation, and the threat that evidence will be destroyed or lost or that the physical well-being of people will be endangered unless immediate action is taken. *See State v. DeLuca*, 168 *N.J.* 626, 632–33, 775 *A.2d* 1284 (2001); *see also Warden v. Hayden*, 387 *U.S.* 294, 298–99, 87 *S.Ct.* 1642, 1645–46, 18 *L.Ed.2d* 782, 787 (1967) (noting that warrant is not necessary when police had probable cause and were in hot pursuit of armed felon); *State v. Frankel*, 179 *N.J.* 586, 609–12, 847 *A.2d* 561 (upholding search of defendant's home under emergency-aid doctrine based on police officer's reasonable belief that person might be in grave danger), *cert. denied*, 543 *U.S.* 876, 125 *S.Ct.* 108, 160 *L.Ed.2d* 128 (2004).

At the very least, exigent circumstances will be present when inaction due to the time needed to obtain a warrant will create a substantial likelihood that the police or members of the public will be exposed to physical danger or that evidence will be destroyed or removed from the scene. *Compare Warden, supra,* 387 *U.S.* at 298–99, 87 *S.Ct.* at 1645–46, 18 *L.Ed.2d* at 787 (holding that police did not need warrant to follow fleeing armed robbery suspect into his house because "the Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others"), *and State v. Martin*, 87 *N.J.* 561, 563–64, 436 *A.2d* 96 (1981) (stating that exigent circumstances were present when police investigating "freshly-committed armed robbery" pulled over and searched car and its occupants matching descriptions given by eyewitnesses), *with State v. Cassidy*, 179 *N.J.* 150, 162, 843 *A.2d* 1132 (2004) (finding no exigent circumstances justifying warrantless search of defendant's home for guns because there was no "immediate threat" made by defendant to his domestic violence victim and sufficient time to secure warrant).

In applying those constitutional principles, we must keep in mind the special status of the home in our federal and state

constitutional schemes and that unlawful, warrantless searches and seizures within the home are "chief evil against which the wording of the Fourth Amendment is directed." *Welsh, supra,* 466 *U.S.* at 748, 104 *S.Ct.* at 2097, 80 *L.Ed.*2d at 742 (quotation omitted); *see also State v. Bolte,* 115 *N.J.* 579, 585, 560 *A.*2d 644, *cert. denied,* 493 *U.S.* 936, 110 *S.Ct.* 330, 107 *L.Ed.*2d 320 (1989). We now turn to the relevant facts bearing on the warrantless search of the duffel bag in the Holloway home.

 First, we reject defendant's argument that the police officers had no right to enter Holloway Sr.'s home to arrest his son. The officers first explained to Holloway Sr. that they had a warrant for his son's arrest and then received his consent to enter his home for the express purpose of taking his son into custody. As such, there was no violation of *Steagald v. United States,* 451 *U.S.* 204, 101 *S.Ct.* 1642, 68 *L.Ed.*2d 38 (1981), which requires that before entering a third-party's home to execute an arrest warrant, law enforcement officers must have either consent, a search warrant, or exigent circumstances.[6] *Id.* at 216, 101 *S.Ct.* at 1650, 68 *L.Ed.*2d at 49–50; *see also State v. Bell,* 388 *N.J.Super.* 629, 639, 909 *A.*2d 1179 (App.Div.2006) (citing *State v. Miller,* 342 *N.J.Super.* 474, 495, 777 *A.*2d 348 (App.Div.2001)). Accordingly, with Holloway Sr.'s valid consent, the police officers lawfully entered the apartment to arrest Holloway.

The police officers acted under the assumption that the gun Holloway brandished hours earlier was somewhere in the apartment. A search conducted incident to Holloway's arrest did not produce the gun. For the sake of this discussion, we will presume that the officers had probable cause to believe that the gun was on the premises. We will also presume that the police did not have

---

[6] We reject defendant's argument that a homeowner is disabled as a matter of law from giving consent to a police officer armed with a warrant to arrest a third-party in the owner's home. *See State v. Domicz,* 188 *N.J.* 285, 306–10, 907 *A.*2d 395 (2006).

sufficient time to obtain a search warrant before responding to Holloway Sr.'s apartment.

After Holloway was handcuffed and led from the apartment, the police officers were in the process of securing the apartment. Five officers had participated in Holloway's arrest. Defendant had been asked by Sergeant McCormick to leave the apartment for a short time to allow the officers to conduct their "business." Sergeant McCormick explained that he intended to ask Holloway Sr. for his consent to search the apartment for the gun and, absent his permission, he intended to apply for a search warrant. When defendant placed a cardboard box in the duffel bag and began to walk out with the bag, Sergeant McCormick wanted to know whether the bag was his. Defendant's equivocal responses, ending with his disclaimer of ownership, along with defendant's prior criminal history, heightened the sergeant's suspicions.

The sergeant then took the duffel bag from defendant. With the bag secure in his hands and other police officers in the same room, Sergeant McCormick did not suggest either that he, his fellow officers, or the apartment's occupants were in any immediate danger or that evidence might be destroyed unless he searched the bag in the house at that moment. To the contrary, he gave as his reason for opening the bag that both defendant and Holloway Sr. disclaimed owning the bag. He testified that had he not found the gun in the bag, his next step would have been to obtain either consent to search the house or a search warrant.

The trial court's finding that there were exigent circumstances is simply not supported by the record. *See Elders, supra*, 192 *N.J.* at 244, 927 *A.*2d 1250 ("A trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction." (quotation omitted)). Here, Sergeant McCormick did not give any reason that would have justified bypassing the warrant process. If Sergeant McCormick believed that there was a need to act with dispatch, he could have maintained the status quo in the apartment and applied for a telephonic search warrant pursuant to *Rule* 3:5-3. That rule, in

part, provides that "[a] warrant may issue if the judge is satisfied that exigent circumstances exist sufficient to excuse the failure to obtain a written warrant, and that sufficient grounds for granting the application have been shown."[7] *R.* 3:5-3(b). When the circumstances are sufficiently exigent that appearing before a judge to obtain a written warrant is either impossible or impracticable, but not so exigent that there is insufficient time to stabilize the situation and call for a warrant, police officers must obtain a telephonic warrant rather than conduct a warrantless search or seizure. *See ibid.; see also State v. Dunlap,* 185 *N.J.* 543, 549–51, 888 *A.*2d 1278 (2006); *State v. Lewis,* 116 *N.J.* 477, 487–88, 561 *A.*2d 1153 (1989).

Law enforcement officers must be particularly careful to observe the dictates of the warrant requirement before undertaking a search or seizure within a home. As the United States Supreme Court observed in *Welsh, supra:*

"The right of officers to thrust themselves into a home is ... a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent."

[466 *U.S.* at 748 n. 10, 104 *S.Ct.* at 2097 n. 10, 80 *L.Ed.*2d at 742 n. 10 (quoting *Johnson v. United States,* 333 *U.S.* 10, 14, 68 *S.Ct.* 367, 369, 92 *L.Ed.* 436, 440 (1948)).]

---

[7] The State has argued that the exigent circumstances needed for a telephonic warrant are no different from the exigent circumstances justifying a bypass of the warrant requirement. We disagree, because if the State were correct the police would never have reason to apply for a telephonic warrant. Simply stated, for purposes of a telephonic warrant, exigent circumstances are present when law enforcement officers do not have sufficient time to obtain a written warrant. *See, e.g., De La Paz, supra,* 337 *N.J.Super.* at 196–97, 766 *A.*2d 820 (suggesting that police should have obtained telephonic warrant before entering defendant's home "as there was no obvious urgency requiring their immediate response at the scene"). For purposes of a warrantless search, exigent circumstances are present when law enforcement officers do not have sufficient time to obtain any form of warrant. *See, e.g., Warden, supra,* 387 *U.S.* at 298–99, 87 *S.Ct.* at 1645–46, 18 *L.Ed.*2d at 787 (upholding warrantless search of house when "police were informed that an armed robbery had taken place, and that the suspect had entered [house] less than five minutes before they reached it").

We therefore hold that the search of the duffel bag was an unreasonable search and that the evidence of the gun must be suppressed. Although we reach that conclusion based solely on the dictates of Article I, Paragraph 7 of our State Constitution, we are confident that the same result is mandated under the Federal Constitution.

## V.

For the reasons we have discussed, we affirm the judgment of the Appellate Division granting defendant standing under state law to challenge the warrantless search of the duffel bag in the Holloway home. Because the search did not comply with the warrant requirements of either the Fourth Amendment of the United States Constitution or Article I, Paragraph 7 of the New Jersey Constitution, we also affirm the Appellate Division's suppression of the fruits of that search, including the gun. We remand to the trial court for proceedings consistent with this opinion.

*For affirmance and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.