**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2227-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v,

LARRY DUKES, a/k/a
LAKEEM DUKES,
LAWRENCE DUKES, LARRY
DUKE, TERRY T. FOWLER,
and TERRY FOWLER,

    Defendant-Appellant.

_____

Submitted January 9, 2024 – Decided January 19, 2024

Before Judges Smith and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-06-0718.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank J. Pugliese, Designated Counsel, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Nancy Anne Hulett, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals the order denying his petition for post-conviction relief. After a trial, defendant was convicted on robbery, aggravated assault, and drug possession charges and was sentenced to an aggregate term of thirty-four years subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. We affirmed on direct appeal, and defendant filed his petition, which the trial court denied without an evidentiary hearing. Defendant contends the PCR court erred by rejecting his claims that he was denied ineffective assistance of counsel. He contends, among other things, trial counsel failed to: investigate alibi witnesses; file certain motions; and obtain a plea offer from the State. For the reasons that follow, we affirm.

I.

We glean the facts and relevant procedural history in part from our opinion affirming defendant's conviction and sentence, State v. Dukes, No. A-4668-17 (App. Div. Mar. 26, 2021) (slip op. at 4).

> During the early morning hours of April 10, 2017, [the three victims] Rodriguez, Ramos-Sanchez, and Paz left a nightclub and headed towards a restaurant. A nearby surveillance camera captured

2

them on film as they passed by shortly before the robbery. At trial, Rodriguez identified the man, seen wearing a hat, walking behind the group almost immediately after they went out of camera range, as the person who punched him in the head from behind, knocking him to the ground. Paz screamed for help, somehow fell, broke her ankle, and rolled beneath a parked car. Rodriguez attempted to get up to help her, but [he] was struck again by the man with a hat, this time with an object. That blow left a laceration on Rodriguez's forehead requiring twelve stitches that left a visible scar shown to the jury. The man with the hat demanded Rodriguez's money and searched his pockets.

. . . .

Paz's recollection was that as the group was walking, someone demanded their money. She thought the assailants were in front of the group but could not be certain.

Ramos-Sanchez said she saw two men approach from the rear and heard them demand money; she was sprayed in the face with an irritant. She immediately ran to an intersecting street, and the men chasing her turned away. Ramos-Sanchez encountered pedestrians leaving a bar, who called the police on her behalf. Her eye remained cloudy after the incident, although she refused medical attention at the time.

None of the victims, who had been drinking, could identify their attackers. Rodriguez remembered only that the man who struck him in the forehead wore dark clothes and a cap. He initially thought he was hit with a gun, but over time became uncertain as to the nature of the object. Rodriguez and Ramos-Sanchez

were sure there were only two assailants; Paz thought there may have been three or four.

New Brunswick Police Sergeant Theirry Lemmerling obtained the surveillance videos, shown to the jury, from two neighborhood stores. He downloaded them onto a flash drive, then transferring them to a disc. During trial, all three victims identified themselves on the video. The person walking closest to the group as it leaves camera range was wearing a hat. Lemmerling made still photographs from the video footage of the two men walking behind the victims, including the man with a hat. A few days later, two New Brunswick police officers drove by defendant standing at a corner. They had been shown the still photograph that morning and knew there was an outstanding warrant for his arrest related to the robbery. The officers stopped, and when one of them told defendant he had an arrest warrant, defendant fled. A third officer saw defendant running, saw him discard ten glassine envelopes containing heroin and fiorinal fentanyl, and caught him. When arrested, defendant was carrying a can of pepper spray.

At the station, New Brunswick Police Department Detective Brandt Gregus questioned defendant and showed him the still photo. Defendant admitted he was the man wearing a hat walking a few paces behind the three victims[,] moments before the robbery. That picture was admitted into evidence and shown to the jury when Gregus testified.

Defendant was indicted by a grand jury, and charged, along with a co-defendant, Ricky Greene, with: three counts of first-degree robbery, N.J.S.A. 2C:15-1; second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2(a) and

4

2C:15-1; and two counts of second-degree aggravated assault, N.J.S.A. 2C:12-1b(1). Defendant alone was also charged with third-degree possession of heroin, N.J.S.A. 2C:35-10a(1), and fourth-degree resisting arrest, N.J.S.A. 2C:29-2a(2).

The State made a joint plea offer to defendants. The proposed agreement was conditioned upon each defendant pleading guilty. One defendant would plead guilty to second-degree aggravated assault, with a recommended eight-year sentence subject to NERA, while the other defendant would plead to second-degree conspiracy to commit robbery, for which the State would recommend a sentence in the third-degree range. Co-defendant Greene rejected the dual plea offer and elected to proceed to trial.

Defendant continued his plea negotiations, and eventually at a pretrial conference he advised the court through trial counsel that he did not want to go to trial and was willing to plead to second-degree aggravated assault in exchange for a five-year sentence. However, the State indicated that it would agree to those terms only if defendant agreed to inculpate Greene. Plea negotiations with defendant ceased, as the State conditioned defendant's plea on getting a plea from Greene. The following colloquy between the trial court and defendant took place at a pretrial conference:

> THE COURT: Mr. Dukes, you know what the deal is
> here. I can't force the prosecutor to give you a deal that

he doesn't want to give you. You want – he wants to give you five years. . . . Mr. Dukes you were present in court when I spoke to Mr. Greene, you understand what's at risk here, right? You have priors?

DEFENDANT: Yes.

THE COURT: All right. So you understand what's at risk here. If you're convicted, conceivably you can go to prison for the rest of your life, right? The prosecutor's offering you five years, but he wants you to inculpate Mr. Greene who's seated right next to you. Because the prosecutor thinks that he was involved to the same extent that you were involved in this robbery. I understand your position is . . . I want the deal, I want to tell the truth, but the truth is, Mr. Greene wasn't involved to the same extent that I was involved in, right?

DEFENDANT: Exactly.

THE COURT: Right. But I can't give you that deal because the deals don't come from me, the deal comes from the prosecutor. You understand that? So right now – and you know what the proofs are in this case, because the prosecutor just laid it out on the record when we spoke about Mr. Greene. So all we can do here is schedule this matter for trial. You have two choices. We can go to trial, you know what the risks are. Or you can take the deal, but the deal that the prosecutor is demanding is that you give up Mr. – you give up Mr. Greene, you understand that? All right. So what we're [going to] do is, we're scheduling this for trial.

After defendant's trial, a jury convicted him of two counts of first-degree robbery, second-degree conspiracy to commit robbery, two counts of second-degree aggravated assault, third-degree heroin possession, and resisting arrest. The court sentenced defendant to an aggregate thirty-four-year term of incarceration. We affirmed defendant's conviction and sentence on direct appeal. Dukes, slip op. at 6-10.

Defendant petitioned for post-conviction relief, alleging: his ability to accept a lesser plea was hindered by personal conflict between his trial counsel and the assistant prosecutor representing the State; his attorney failed to investigate potential alibi witnesses; and other errors by his trial attorney amounted to cumulative error contrary to his right to effective assistance of counsel. Defendant also argued that "inconsistent and questionable" witness testimony compromised his right to a fair trial.

The PCR court denied the petition without an evidentiary hearing, making oral findings. The court rejected defendant's ineffective assistance of counsel claim, finding the record did not support the theory that a personal dispute between counsel and the prosecutor caused negotiations to fail. The court also found defendant presented no facts to support a potential alibi, and that if he had, any testimony regarding an alibi would have been undermined by

7

defendant's admission he was at the scene. The court also found that other errors alleged by defendant, such as failing to file certain pre-trial motions, did not constitute a prima facie cause of ineffective assistance of counsel, and concluded there was no cumulative error. Finally, the court determined that certain of defendant's arguments were inapposite for PCR because they should have been raised on direct appeal.

Defendant raises the following points in his appeal:

POINT I:

THE PCR COURT ERRED IN FINDING THAT DEFENDANT WAS NOT DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL. ALTERNATIVELY, DEFENDANT ESTABLISHED A PRIMA FACIE CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHICH WAS SUPPORTED BY MATERIAL ISSUES OF DISPUTED FACTS LYING OUTSIDE THE RECORD. THE RESOLUTION OF THE DISPUTED FACTS NECESSITATED AN EVIDENTIARY HEARING. THE PCR COURT ERRED IN FAILING TO CONDUCT SUCH A HEARING.

POINT II:

FOR THE REASONS EXPRESSED IN POINT I, SUPRA, THE PCR COURT ERRED WHEN IT RULED THAT DEFENDANT FAILED TO ESTABLISH A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL. THIS ERROR LED IT TO ERRONEOUSLY REJECT DEFENDANT'S CLAIM OF CUMULATIVE ERROR.

8

POINT III:

DEFENDANT WAS CONVICTED BY INCONSISTENT AND QUESTIONABLE WITNESSES' TESTIMONIES. BASIC FAIR PLAY AND FUNDAMENTAL FAIRNESS REQUIRED THAT HE BE GRANTED A NEW TRIAL BY THE PCR COURT.

## II.

We use a de novo standard of review when a PCR court denies relief without an evidentiary hearing. State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020); see also State v. Nash, 212 N.J. 518, 540-41 (2013). Our rules require a court to conduct an evidentiary hearing on a PCR petition, "only upon the establishment of a prima facie case in support of post-conviction relief." R. 3:22-10(b). "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" State v. Porter, 216 N.J. 343, 355 (2013) (quoting R. 3:22-10(b)).

To establish a prima facie claim of ineffective assistance of counsel, defendant must show: (1) counsel's performance was deficient; and (2) the deficiency prejudiced the defense. Strickland, 466 U.S. at 687; State v. Fritz, 105 N.J. 42, 52 (1987) (adopting Strickland). A successful showing requires defendant to establish "by a preponderance of the credible evidence" entitlement

A-2227-22

to the requested relief.  Nash, 212 N.J. at 541 (quoting State v. Preciose, 129 N.J. 451, 459 (1992)).

To satisfy the first Strickland prong, "a defendant must overcome a 'strong presumption' that counsel exercised 'reasonable professional judgment' and 'sound trial strategy' in fulfilling [their] responsibilities." State v. Hess, 207 N.J. 123, 147 (2011) (quoting Strickland, 466 U.S. at 689-90).  "[I]f counsel makes a thorough investigation of the law and facts and considers all likely options, counsel's trial strategy is 'virtually unchallengeable.'" State v. Chew, 179 N.J. 186, 217 (2004) (quoting Strickland, 466 U.S. at 690-91).

Because prejudice under Strickland's second prong is not presumed, Fritz, 105 N.J. at 52, a defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding.  United States v. Cronic, 466 U.S. 648, 659 n.26 (1984).  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Gideon, 244 N.J. 538, 550-51 (2021) (alteration in original) (quoting Strickland, 466 U.S. at 694).

III.

A.

Defendant argues he did not receive effective assistance of counsel during plea negotiations. Specifically, he contends that he wanted to accept a plea offer, but the offer was rescinded because of interpersonal conflict between trial counsel and the assistant prosecutor. He alleges trial counsel informed him of this ongoing conflict. Plaintiff posits this issue at least represents a factual question which justifies an evidentiary hearing. We disagree.

"A defendant asserting plea counsel's assistance was ineffective may meet the first prong of the Strickland standard if the defendant can show counsel's representation fell short of the prevailing standards expected of criminal defense attorneys." State v. Vanness, 474 N.J. Super. 609, 624 (App. Div. 2023) (citing Padilla v. Kentucky, 559 U.S. 356, 366-67 (2010)). "Plea counsel's performance will not be deemed deficient if counsel has provided the defendant 'correct information concerning all of the relevant material consequences that flow from such a plea.'" Id. at 624 (quoting State v. Agathis, 424 N.J. Super. 16, 22 (App. Div. 2012)); see also Nuñez-Valdez, 200 N.J. 129, 138-39 (2009).

Defendant fails to establish a prima facie claim for ineffective assistance of counsel during his plea negotiations. His claim that his plea was rescinded

due to personal issues between the lawyers is not borne out in the record. Even accepting defendant's claims about conflict as true, the record shows defendant's predicament was entirely attributable to either Greene's refusal to plead or his refusal to testify against Greene.

The colloquy at his plea hearing shows defendant clearly understood the requirements of the proposed plea agreement and the potential ramifications of going to trial. His decision to proceed to trial was knowing and voluntary. The record further shows trial counsel worked diligently to obtain a non-contingent plea offer from the State, even requesting a meeting with the assistant prosecutor's supervisor. Defendant failed to present proof that trial counsel provided him with inaccurate or incomplete information during plea negotiations. On this question, defendant has failed to show ineffective assistance of counsel.

## B.

Defendant argues his trial counsel failed to fully investigate his case. He alleges that he asked his attorney to speak with two alibi witnesses, but counsel never did. He contends this was ineffective assistance of counsel. We are not persuaded.

"Failure to investigate an alibi defense is a serious deficiency that can result in the reversal of a conviction." Porter, 216 N.J. at 353. "Indeed, 'few defenses have greater potential for creating reasonable doubt as to a defendant's guilt in the minds of the jury [than an alibi].'" Ibid. (quoting State v. Mitchell, 149 N.J. Super. 259, 262 (App. Div. 1977)). A PCR petitioner asserting that his trial attorney inadequately investigated a potential witness "must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Ibid. (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)).

Defendant's claim has no merit, as he fails to assert any specific facts which an investigation of his alibi witnesses would have revealed. Even if counsel erred in failing to contact these witnesses, any potential testimony they might have offered regarding an alibi would be critically undermined by defendant's own admission placing himself at the scene, so he cannot show prejudice under the second prong of Strickland.

In a related argument, defendant suggests the PCR court erred by rejecting his claim that his admission placing himself at the scene of the crime was not probative of his guilt. Defendant's attempt to persuade the PCR court, and now

13

us, that this fact is not dispositive on a <u>Strickland</u> prong two analysis has no merit. His argument that being present at the scene of the crime does not conclusively establish guilt misses the point. While true, it is not relevant in a <u>Strickland</u> analysis, as an alibi witness could not credibly support a theory that defendant was present at the scene, but was somehow not the assailant. Defendant failed to present proof of ineffective assistance of counsel on this question and, if he had, he could not have overcome his own admission in order to show prejudice.

C.

Defendant argues his trial counsel was ineffective for failing to file motions for suppression, dismissal of the indictment, and for a <u>Wade</u>[1] hearing. We disagree.

A motion to suppress evidence seized at the scene of the arrest would have failed as the heroin, which he was observed discarding while fleeing the police, was lawfully seized as abandoned property. <u>See</u> <u>State v. Johnson</u>, 193 N.J. 528, 548-549 (2008). Similarly, a <u>Wade</u> hearing to challenge his out-of-court identification by witnesses would have been futile, as witnesses were never able

---

[1] <u>United States v. Wade</u>, 388 U.S. 218 (1967).

to identify defendant. Defendant placed himself at the scene. See Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 3:11 (2024).

Finally, a motion to dismiss the indictment would not have succeeded as defendant has not alleged any defect in the indictment. See State v. Bell, 241 N.J. 552, 560 (2020) ("[A] court should dismiss [an] indictment 'only on the clearest and plainest ground, and only when the indictment is manifestly deficient or palpably defective.'" (quoting State v. Twiggs, 233 N.J. 513, 531-32 (2018))).

Again, defendant has not established a prima facie case for ineffective assistance of counsel under Strickland.

### D.

Defendant argues a new trial is warranted based on the doctrine of fundamental fairness pursuant to Rule 3:20-1, because he was convicted based on inconsistent evidence. Defendant specifically submits that none of the victims were able to identify him as an assailant. A petition for PCR is not the proper vehicle for these arguments.

Grounds for a motion for post-conviction relief are limited and include: (1) deprivations of defendant's constitutional rights; (2) lack of jurisdiction by the trial court; (3) illegal sentences; (4) collateral attack by habeus corpus or

other common-law or statutory remedy; and (5) ineffective assistance of counsel. R. 3:22-2. Issues that could have been raised in prior proceedings are generally barred from being brought in a PCR. R. 3:22-4(a).

Defendant's fundamental fairness claims are not cognizable on this record. To the extent defendant argues for a new trial in the interest of justice pursuant to Rule 3:20-2, defendant's argument claim is time barred, as he did not raise it within 10 days of the jury's verdict or offer newly-discovered evidence. To the extent defendant argues sufficiency of the evidence, it was argued in his direct appeal, and cannot be raised again in a motion for post-conviction relief pursuant to Rule 3:22. The PCR court properly rejected these claims.

To the extent we have not addressed defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2227-22